772 So.2d 339 (2000)
ALLSTATE INSURANCE CO.
v.
FORD MOTOR COMPANY.
No. 00-710.
Court of Appeal of Louisiana, Third Circuit.
November 2, 2000.
*341 Michael D. Hislop, Bolen, Parker & Brenner, Alexandria, LA, Counsel for Plaintiff/Appellee.
John Burke Sanders, Pulaski Gieger & Laborde, Covington, LA, Counsel for Defendant/Appellant.
(Court composed of Judge BILLIE COLOMBARO WOODARD, Judge MARC T. AMY and Judge MICHAEL G. SULLIVAN).
AMY, Judge.
Plaintiff filed suit seeking reimbursement from the defendant for the amount of a claim paid to an insured after the insured's pick-up truck caught fire and burned beyond repair. The plaintiff alleged that the truck manufactured by the defendant contained a defect in the steering column which allegedly caused the fire. The trial court granted judgment in favor of the plaintiff, and the defendant appealed. Thereafter, the plaintiff moved to have the defendant assessed with court costs and expert witness fees. The trial court awarded the plaintiff $1000.00 in expert witness fees plus court costs. From this latter judgment the plaintiff appeals. For the following reasons, we affirm both judgments.

Factual and Procedural Background
In May of 1995, Timothy Leger purchased a new 1995 Ford Ranger pick-up truck which he had insured by Allstate Insurance Company (Allstate). On October 9, 1995, while parked at a friend's home, the truck was damaged by a fire which allegedly started in the truck's cab area. After reviewing Mr. Leger's claim for property damage, Allstate paid the lienholder of the truck $14,311.00 and $200.00 to Mr. Leger for personal effects lost in the fire. In return, Allstate assumed the title to the truck and was assigned all rights to pursue a claim for reimbursement of the monies paid on the claim.
In October of 1995, Arthur Marchand, an Allstate claims handler, inspected the truck in an attempt to determine the cause of the accident. Unable to reach a conclusive determination as to the cause of the fire, Mr. Marchand contacted Glenn Bolton, a fire cause and origin investigator for System Engineering and Laboratories (SEAL). After his investigation, Mr. Bolton determined that the point of origin of the fire was located in the steering column and suspected that the fire was caused by a defect in the ignition switch wiring. Mr. Bolton requested, and was granted, permission to remove the steering column to aid in his investigation. Thereafter, the truck was sold for parts in March of 1996.
On October 4, 1996, Allstate instituted a claim for property damage against Ford Motor Company alleging that Mr. Leger's truck contained "latent and/or hidden manufacturing defects" which had "caused damage to the truck and rendered it unreasonably dangerous for normal use."
On October 9, 1997, Ford filed a motion seeking sanctions against Allstate for allegedly spoliating evidence material to its defense against the manufacturing defect claim. Ford asserted that Allstate intentionally destroyed relevant evidence when it sold the truck for scrap. Ford alleged that on December 15, 1995, its office of general counsel sent a letter to the Allstate claims adjuster, Mr. Marchand, requesting the location of the vehicle and advising Allstate that "all necessary steps should be taken to ensure that the subject vehicle and all of its component parts are maintained and preserved for trial." The motion requested a dismissal of the case or, alternatively, to bar Allstate's expert witnesses from testifying and impose an adverse presumption against Allstate that had the truck been presented it would have been adverse to its claim. After conducting a contradictory hearing, the trial *342 judge denied the motions. However, the trial judge in oral reasons noted that although he was denying the motion, he would not rule on the admissibility of Allstate's expert testimony. He stated that the trial judge hearing the case could make whatever decision he wanted to relative to the introduction of that testimony.
On July 30, 1999, Ford filed a second motion requesting that Allstate be excluded from offering any expert testimony or evidence regarding the truck and, alternatively, that all evidence surrounding any alleged defect in any area of the truck, other than the steering column, be excluded and for the imposition of an adverse presumption. The trial judge hearing the matter opined that the law of the case doctrine applied, and therefore, denied the motion to exclude.
This matter proceeded to trial on September 1, 1999. After receiving the evidence, the trial court rendered judgment in favor of Allstate finding that "the fire that destroyed the 1995 Ford Ranger was the result of a defective electrical component part installed by Ford at the time it manufactured the vehicle." The defendant appealed. Thereafter, Allstate sought a separate judgment for the amount of expert witness fees and costs that it had incurred in the litigation of this claim. The trial judge awarded Allstate $1000.00 for the witnesses' fees and $831.98 for court costs. It is from this second judgment that Allstate appeals.

Discussion of the Merits

Spoliation of Evidence
In its first assignment of error, Ford alleges that the trial court erred by failing to exclude Allstate's expert witnesses' testimony and imposing an adverse presumption against Allstate for intentionally spoliating evidence and impairing its ability to defend the case. Secondly, Ford alleges that it was error for the trial judge to rely on the law of the case doctrine to deny Ford's motion to exclude expert testimony because at the hearing on the first motion, the trial judge made no ruling on whether sanctions, including exclusion of expert testimony and the imposition of an adverse presumption, would be granted.
Ford's first motion sought a dismissal of the case or, alternatively, an order barring Allstate's expert witnesses from testifying and for the imposition of an adverse presumption against Allstate for its failure to preserve the truck claimed to have contained a defect. The judgment stemming from the hearing on this motion ordered that the motion be denied in its entirety. The trial judge hearing the motion stated in his oral reasons for judgment that although he would deny the motions asserted by Ford, he would not rule as to whether or not the expert testimony involving the truck would be admissible or inadmissible at that time and would reserve that decision to be made by the judge conducting the bench trial on the matter. Thereafter, when Ford reasserted its motion to exclude Allstate's expert witnesses and requested that an adverse presumption be imposed against Allstate, the trial judge denied Ford's second motion, finding that the law of the case doctrine applied. We note that the record does not contain the transcript from the hearing on the second motion, but only the notice of oral judgment which indicates the trial judge's ruling.
Louisiana jurisprudence holds that when a litigant destroys, conceals, or fails to produce evidence within his or her control, it gives rise to an adverse presumption that had the evidence been produced, it would have been detrimental to the litigant's case. Rodriguez v. Northwestern Nat'l Ins. Co., 358 So.2d 1237 (La.1978); Navarrette v. Laughlin, 209 La. 417, 24 So.2d 672 (1946); Morehead v. Ford Motor Co., 29,399 (La.App. 2 Cir. 5/21/97); 694 So.2d 650, writ denied, 97-1865 (La.11/7/97); 703 So.2d 1265; McElroy v. Allstate Ins. Co., 420 So.2d 214 (La.App. 4 Cir.), writ denied, 422 So.2d 165 (La.1982). However, the presumption does not apply when a reasonable explanation *343 exists for the failure to produce the evidence. Babineaux v. Black, 396 So.2d 584 (La.App. 3 Cir.1981). See Rodriguez, 358 So.2d 1237; Boh Bros. Constr. Co., Inc. v. Luber-Finer, Inc., 612 So.2d 270 (La.App. 4 Cir.1992), writ denied, 614 So.2d 1256 (La.1993).
After review of the facts presented, we do not find error in the trial judge's denial of Ford's motion. Allstate's principal claim was that the cause of the fire was a defect in the ignition switch wiring found in the steering column. Allstate came to this conclusion after the fire investigator hired by Allstate had inspected and photographed the entire truck. And not until this point did Allstate allow the removal of the steering column to further aid in its investigation. The steering column was then stored and later made available to Ford for its own examination. The truck was also placed in storage from approximately November of 1995, until March of 1996, at which time it was salvaged. In light of these facts, we do not find an abuse of the trial court's discretion in its denial of Ford's motion requesting an imposition of an adverse presumption or exclusion of expert witnesses. Here, the part of the product which Allstate claims to be defective and the particular evidence needed to determine whether or not a defect existed in the truck's steering column has not been destroyed, concealed, or spoliated by Allstate. And, although Ford would have preferred to have inspected the truck as a whole, there is nothing in the record which indicates that it was Allstate's intent to discard the truck in order to gain an unfair advantage over Ford in this litigation. Thus, we find that the policy considerations for imposing an adverse presumption would not be furthered by applying it against Allstate in this particular case. Therefore, we find no clear error in the trial judge's ruling as to denying Ford's motion requesting sanctions for spoliation of evidence.
Moreover, we do not find error in the second trial judge's denial of Ford's motion in limine while relying on the law of the case doctrine. The law of the case doctrine is applicable to the binding force of a prior trial judge's ruling on the same issues during the later stages of the trial. Ducote v. City of Alexandria, 97-947 (La. App. 3 Cir. 2/4/98); 706 So.2d 673, writ denied, 98-1048 (La.5/29/98); 719 So.2d 1275; Jones v. McDonald's Corp., 97-2287 (La.App. 1 Cir. 11/6/98); 723 So.2d 492. The doctrine is discretionary and should not be applied where it would effectuate an obvious injustice or when the prior ruling was clearly wrong. Id. In its assertion that the trial court erroneously relied on the law of the case doctrine, Ford states that it was error because the prior trial judge orally exempted from the denial of the first motion, any ruling on whether sanctions for spoliation of evidence, including exclusion of expert evidence and the imposition of an adverse presumption would be granted. We do not agree. After listening to oral arguments on the motion, the trial court stated the following:
By The Court:
This will be a bench ...
By [Attorney]:
That's correct.
By The Court:
... and I gather that the alternative remedy to bar plaintiff's expert's testimony would be in the nature of a motion in limine which is really not significant in a bench trial. I'm going to deny the motions. You'll have to, when a Judge tries it, probably Judge Randow, he can make whatever decision he wants to relative to the introduction of that testimony. I'm not going to rule it admissible or inadmissible at this time.
The transcript reflects that the trial judge did in fact deny Ford's motion which included a request for a dismissal, or alternatively, exclusion of Allstate's expert witnesses and imposition of an adverse presumption. However, the trial judge stated that he would not rule as to whether the expert's testimony would be admissible, for *344 this would be a decision better made by the trial judge receiving such testimony.
Accordingly, we find no abuse of the discretion afforded the trial judge in applying the law of the case doctrine and his determination that the prior ruling on the motion was not erroneous and that it would not amount to an obvious injustice. Ducote, 97-947; 706 So.2d 673. Thus, we find Ford's assertions as to this issue without merit.

Products Liability
In its third assignment of error, Ford alleges that the trial court erred in finding that Allstate had sufficiently proved a defect existed in the 1995 Ford Ranger. Ford asserts that Allstate offered no evidence of Ford's specifications or performance standards and no evidence of a specific deviation from identical Ford Rangers.
La.R.S. 9:2800.54 states in part, that:
A. The manufacturer of a product shall be liable to a claimant for damage proximately caused by a characteristic of the product that renders the product unreasonably dangerous when such damage arose from a reasonably anticipated use of the product by the claimant or another person or entity.
B. A product is unreasonably dangerous if and only if:
(1) The product is unreasonably dangerous in construction or composition as provided in R.S. 9:2800.55.
"A product is unreasonably dangerous in construction or composition if, at the time the product left its manufacturer's control, the product deviated in a material way from the manufacturer's specifications or performance standards for the product or from otherwise identical products manufactured by the same manufacturer." La. R.S. 9:2800.55. See Halphen v. Johns-Manville Sales Corp., 484 So.2d 110 (La. 1986).
Allstate alleged that the fire which burned the truck in question was caused by defective wiring leading from the ignition switch of the truck. Mr. Glenn Bolton, one of Allstate's two expert witnesses in fire cause and origin, explained that from his investigation of the truck fire, burn patterns evidenced that the point of origin of the fire was in the immediate area of the ignition switch. Moreover, Mr. Bolton determined that overheating of the ignition switch wiring caused the fire. He explained that the overheating of the wiring was evidenced by the "sleeving" of the wiring or the melting of insulation surrounding the ignition switch wiring in that vicinity. He opined that the wires leading from the ignition switch were subjected to a higher than specified current load, which caused the wires to overheat. Mr. Bolton testified further that his investigation revealed no signs of other possible fire causes such as improper repair or the addition of an aftermarket product which could have effected the truck's wiring, or any trace of accelerates which would indicate arson.
John Gibson, electrical engineer and qualified expert in the area of fire and cause origin, confirmed Mr. Bolton's opinion as to the cause of the fire. He also found sleeving of the two wires leading from the ignition switch and opined that the higher than specified current in the wires caused the wires to overheat, and eventually, caused the fire.
Further, Allstate introduced a Ford recall for the ignition switch wiring for the 1994 Ford Aerostar. The Aerostar was subject to recall because the wires leading from the ignition switch were subject to a higher than specified current load on the accessory wiring. Allstate alleged, through its expert witnesses, that the 1995 Ford Ranger and the 1994 Ford Aerostar utilized the same ignition switch and, thus, supported its contention that there was a defect in the truck's wiring.
Ford's expert witnesses, Raymond Prejean and Burgess Young, both attempted to discount the testimony given by Allstate's experts. Mr. Prejean testified that *345 after reviewing the photographs taken of the truck after the fire, he did not believe that the fire started in the steering column. However, he was unable to determine what caused the fire because he could not inspect the entire truck and fully investigate the cause of the fire. Mr. Prejean did indicate that because the owner had the ignition switch in the "on position" while listening to the radio rather than having it turned to the preferred "accessory position" while the truck engine was off, this situation would have allowed a full current to flow from the truck's circuit board. And without a place for the current to go, i.e., without starting the engine, the current could overload a weak link in the truck's electrical system. He stated that this would not be Ford's fault since it could happen to any vehicle's electrical system, rather, it would be the fault of the person playing the radio while the ignition was in the on position.
Mr. Young, a design analysis for Ford Motor Company, opined in his deposition submitted to the court that after his examination of the steering column, that there was no defect in the steering column assembly. Rather, after seeing the photographs taken of the truck by Mr. Bolton prior to Allstate's disposal of the truck, he believes that the fire originated to the left of the steering column but could not say exactly because he could not personally examine the truck. Mr. Young also stated that the wiring diagram for the 1995 Ford Ranger and the 1994 Ford Aerostar are not the same and that there has been no recall ordered for the ignition assembly of the 1995 Ford Ranger.
In the trial court's oral reasons for judgment, the court found that "the fire that destroyed the 1995 Ford Ranger was the result of a defective electrical component part installed by Ford at the time it manufactured the vehicle." We note that "[w]hether a product is unreasonably dangerous, and thereby is defective, is a question of fact to be made by the factfinder." Hines v. Remington Arms Co., 94-455, p. 6 (La.12/8/94); 648 So.2d 331, 335. Such decision will not be set aside on appeal unless it is clearly wrong or manifestly erroneous. Rosell v. ESCO, 549 So.2d 840 (La.1989). Where there are conflicts in testimony, the factfinder's reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed on review. Id. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be manifestly erroneous. Id.
In light of the conflicting expert testimony presented in this matter, we do not find that it was manifestly erroneous for the trial court to render judgment in favor of Allstate. We do not find any clear error in the trial court's conclusion that the 1995 Ford Ranger insured by Allstate contained a defect in the ignition switch wiring which caused the wires to overheat, causing the steering column to catch fire. Thus, we find Ford's assignment of error in this regard, without merit.

Redhibition
In Ford's final assignment of error, it alleges that the trial court erred in ruling that Allstate had properly asserted a redhibition claim. After Allstate closed its case against Ford, Ford moved for a directed verdict against Allstate claiming it had failed to prove that the truck contained a manufacturing defect.[1] In its argument against the motion for a directed verdict, Allstate claimed that although it believed it had proven a specific defect it believed its petition alleged sufficient facts to include a claim for redhibition. Ford objected to the introduction of the redhibition theory of recovery. In denying the motion, the trial court stated that it thought Allstate's pleading was broad *346 enough to encompass a claim for redhibition, but regardless, found that Allstate had presented sufficient evidence as to the product liability claim under La.R.S. 9:2800.55.
Without determining whether or not Allstate had stated a claim for redhibition or that it was entitled to assert a claim for redhibition, we find no merit in this assignment of error. The trial court found that Allstate had offered sufficient evidence in support of its product's liability claim so that the directed verdict was unwarranted. Moreover, the trial court eventually found that the truck contained a defective product under the Products Liability Act. Thus, we find that Ford has failed to demonstrate how it was harmed by the trial court's statements concerning the redhibition claim.

Expert Witness Fees
On February 23, 2000, Allstate filed a motion to have Ford assessed with court costs and expert witness fees. A hearing was held at which Allstate submitted an affidavit from a member of the Auto Products Liability Unit of Allstate Insurance Company, along with a copy of an Allstate payment ledger, asserting that Allstate had paid $16,364.59 in expert witness fees. After hearing the arguments presented, the trial court awarded Allstate with $1000.00 in expert witness fees and $831.98 in court costs. Allstate appealed this judgment.
The trial court has great discretion in awarding costs including expert witness fees, which will not be reversed on appeal in the absence of an abuse of discretion. Olsen v. Johnson, 99-783 (La. App. 3 Cir. 11/3/99); 746 So.2d 740. The trial judge is not required to set an expert witness fee at the amount charged by the expert witness. Trahan v. Savage Indus., Inc., 96-1239 (La.App. 3 Cir. 3/5/97); 692 So.2d 490, writ denied, 97-1636 (La.10/3/97); 701 So.2d 207, writ denied, 97-1652 (La.10/3/97); 701 So.2d 209.
Allstate alleges in support of its claim for $16,364.59 in expert witness fees that the litigation in this matter was quite protracted and hard fought. Additionally, it asserts that the experts had to come from Tyler, Texas and Lake Charles, Louisiana and that a mere $1000.00 could not possibly cover the costs incurred by it in procuring their presence at trial. However, the trial court in considering the circumstances particular to Allstate in this case found $1000.00 to be a reasonable amount. We conclude that the amount awarded was not an abuse of the trial court's broad discretion. Accordingly, we find this assignment of error meritless.

DECREE
For the foregoing reasons, the judgments of the trial court are affirmed. The costs of this appeal are to be divided equally between the plaintiff, Allstate Insurance Company, and the defendant, Ford Motor Company.
AFFIRMED.
WOODARD, J., concurs in the result.
NOTES
[1] We note that although Ford moved for a directed verdict in this matter, the proper procedural device used to dismiss a plaintiff's action in a bench trial, after the plaintiff has completed the presentation of its evidence, is a motion for an involuntary dismissal. La. Code Civ.P. art. 1672(B).