813 So.2d 1212 (2002)
Nadine LANTHIER
v.
FAMILY DOLLAR STORE.
No. 01-0437.
Court of Appeal of Louisiana, Third Circuit.
April 3, 2002.
*1214 Michael B. Miller, Crowley, LA, for Plaintiff/Appellant Nadine Lanthier.
Azelie Ziegler Shelby, Brian K. Abels, Ungarino & Eckert, L.L.C., Baton Rouge, LA, for Defendant/Appellee Family Dollar Store.
Court composed of ULYSSES GENE THIBODEAUX, BILLIE COLOMBARO WOODARD, MARC T. AMY, MICHAEL G. SULLIVAN, and GLENN B. GREMILLION, Judges.
GREMILLION, Judge.
The plaintiff, Nadine Lanthier, appeals the judgment of the workers' compensation judge categorizing her as a part-time employee of the defendant, Family Dollar Store, and denying her further disability benefits, penalties, and attorney's fees. For the following reasons, we affirm in part, amend in part, and render.

FACTS
Lanthier, a cashier for Family Dollar, fell injuring her right hip, hand, and wrist, and lower back on January 14, 1999. She was initially treated by her family doctor, Dr. Brian Heinen, who restricted her from working on March 19, 1999. Lanthier was seen by Dr. Gregory Gidman, an orthopedic surgeon, at the request of Family Dollar. Dr. Heinen referred Lanthier to Dr. Stephen Nason, an orthopedic surgeon, for treatment of her back, hip, and hand injuries. Dr. Nason diagnosed her as suffering from carpal tunnel syndrome and performed a carpal tunnel release on her right wrist. On July 29, 1999, Lanthier was released to light duty work status. After her return to work, her right thumb began locking up, which was diagnosed as trigger thumb by Dr. Nason. She underwent surgery to correct this disorder on March 14, 2000, at which time she was restricted from working.
Lanthier's right hand was also evaluated by Dr. Darrell Henderson, a plastic and reconstructive surgeon. On July 19, 2000, Dr. Henderson stated that she was at maximum medical improvement and could return to work without any restrictions. However, on July 26, 2000, Dr. Nason, while noting Dr. Henderson's recommendations, released Lanthier to light duty work only, with a lifting restriction of five pounds based on her difficulty in using and pain in her right thumb. He further noted she had problems lifting things. Lanthier requested light duty work from Family Dollar after her release to return to work by Dr. Nason, but was never placed on the work schedule.
Family Dollar initiated weekly compensation benefits to Lanthier in the amount of $98 on March 26, 1999. On May 28, 1999, it increased her benefits to $114.35, upon the receipt of Lanthier's wage information from Family Dollar. Lanthier received these benefits until July 29, 1999, at which time she was released to work following her carpal tunnel release surgery. Travelers recommenced weekly compensation benefits on March 14, 2000, and continued paying them until Dr. Henderson released her to return to unrestricted work on July 19, 2000.
On August 27, 1999, Lanthier filed a disputed claim for compensation against Family Dollar alleging its failure to pay workers' compensation benefits and provide proper medical treatment. She included a claim for penalties and attorney's fees. Following a hearing on the merits, the workers' compensation judge held that Lanthier was a part-time employee of Family Dollar and that she was capable of returning to work on July 26, 2000. He further awarded her $2,000 in penalties and $2,000 in attorney's fees for Family *1215 Dollar's failure to reimburse her for mileage, but denied her request for penalties and attorney's fees on the basis that Family Dollar improperly calculated her wages and was untimely in initiating the payment of compensation benefits. Lanthier's appeal followed.

ISSUES
Lanthier raises four assignments of error on appeal. She disputes the workers' compensation judge's classification of her as a part-time employee and, in doing so, its reliance upon the hearsay testimony of Denise Guidry. She further argues that the workers' compensation judge erred in finding that she was capable of returning to work and in denying her claim for additional penalties and attorney's fees.

STANDARD OF REVIEW
The standard of review in a workers' compensation hearing was set out in Banks v. Industrial Roofing & Sheet Metal Works, Inc., 96-2840, pp. 7-8 (La.7/1/97), 696 So.2d 551, 556:
Factual findings in workers' compensation cases are subject to the manifest error or clearly wrong standard of appellate review. Smith v. Louisiana Dep't of Corrections, 93-1305, p. 4 (La.2/28/94), 633 So.2d 129, 132; Freeman v. Poulan/Weed Eater, 93-1530, pp. 4-5 (La.1/14/94), 630 So.2d 733, 737-38. In applying the manifest error-clearly wrong standard, the appellate court must determine not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. Freeman, 93-1530 at p. 5, 630 So.2d at 737-38; Stobart v. State, 617 So.2d 880, 882 (La.1993); Mart v. Hill, 505 So.2d 1120, 1127 (La.1987). Where there are two permissible views of the evidence, a factfinder's choice between them can never be manifestly erroneous or clearly wrong. Stobart, 617 So.2d at 882. Thus, "if the [factfinder's] findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." Sistler v. Liberty Mut. Ins. Co., 558 So.2d 1106, 1112 (La. 1990).

PART-TIME EMPLOYMENT
In her first assignment of error, Lanthier argues that the workers' compensation judge erred by classifying her as a part-time employee of Family Dollar. She claims that this was in error since she testified that she was a full-time employee and that she generally worked thirty to thirty-two hours per week.
Lanthier's classification as either a full or part-time employee is important, since an employee is entitled to weekly compensation benefits equaling sixty-six and two thirds of her average weekly wage during a period of temporary total disability. La. R.S. 23:1221(1); La.R.S. 23:1021(10). An employee's average weekly wage is determined from the amount of hours the employee works and her classification as either a full or part-time employee. La.R.S. 23:1021(10) provides:
(a) Hourly wages.
(i) If the employee is paid on an hourly basis and the employee is employed for forty hours or more, his hourly wage rate multiplied by the average actual hours worked in the four full weeks preceding the date of the accident or forty hours, whichever is greater; or
(ii) If the employee is paid on an hourly basis and the employee was offered employment for forty hours or more but regularly, and at his own discretion, works less than forty hours per week for whatever reason, then, the average of *1216 his total earnings per week for the four full weeks preceding the date of the accident; or
(iii) If the employee is paid on an hourly basis and the employee is a part-time employee, his hourly wage rate multiplied by the average actual hours worked in the four full weeks preceding the date of the injury.
A part-time employee is defined as "an employee who as a condition of his hiring knowingly accepts employment that (a) customarily provides for less than forty hours per work week, and (b) that is classified by the employer as a part-time position." La.R.S. 23:1021(9).
The Family Dollar Associate Handbook classified regular associates as follows:
Regular, Full-Time: An associate hired for an indefinite period which is expected (but not guaranteed) to be more than 90 days with a regularly assigned workweek averaging 30 hours or more.
Regular, Part-Time: An associate hired for an indefinite period which is expected (but not guaranteed) to be more than 90 days with a regularly assigned workweek averaging less than 30 hours.
Family Dollar admitted into evidence the employment application submitted by Lanthier, which reveals that she requested part-time employment, and a Personnel Action Form, which shows that she was classified by Family Dollar as a regular, part-time employee.
A request for wage information, submitted to Family Dollar by Travelers, lists the hours worked by Lanthier for the four weeks preceding her injury on January 14, 1999. For the week ending January 13, 1999, she worked 30.75 hours; the week ending January 6, 1999, she worked 36.25 hours; the week ending December 30, 1998, she worked 28.75 hours; and the week ending December 23, 1998, she worked 29 hours.
Denise Guidry, the manager of the Family Dollar store in Eunice and Lanthier's supervisor, testified that she hired employees and assigned the work schedules for those employees. She testified that Lanthier interviewed for a part-time position and that she was hired as a part-time cashier earning $5.15 per hour. At the time of her accident, she was earning $5.50 per hour. She further stated that Lanthier initially worked thirty-eight to forty hours per week, but that this was only because Guidry was out sick. Once she returned to work, Guidry testified that Lanthier's hours decreased and, that afterwards, were only increased during the holidays.
Guidry further testified that only full-time employees of Family Dollar received fringe benefits, such as vacation pay and medical insurance, whereas part-time employees did not. She stated that Lanthier was never offered medical insurance, but admitted that she received vacation benefits in one of her checks. However, she described this as a computer error, which was later corrected. Guidry stated that she, herself, received ninety-six hours of vacation instead of the forty-eight hours to which she was entitled. She stated that this was corrected at a later date.
Lanthier admitted that she applied for part-time employment with Family Dollar and that she thought she was part-time when she was hired. However, she stated that Family Dollar never informed her of her work classification after she was hired. She stated that she only realized that she was a full-time employee due to the number of hours she was working, since the Associates Handbook considered more than thirty hours full-time employment. While Guidry was out sick, Lanthier stated *1217 that she worked nearly forty hours per week and, afterwards, between thirty and thirty-two hours per week. She further testified that she received thirty-one hours of vacation in her October 1, 1999 employment check. However, Lanthier admitted that she had never received vacation pay prior to this pay check. She also stated that she was never offered medical insurance by Family Dollar.
After reviewing the evidence, it is clear that the workers' compensation judge was presented with two views of the evidence pertaining to Lanthier's employment status. Lanthier admitted that she only sought part-time employment, and that she did not consider herself a full-time employee when she was hired. Additionally, her employment application and the Personnel Action Form substantiates her belief that she was a part-time employee. We further note that Guidry testified that Lanthier only worked in excess of thirty hours a week when she was out sick and during the holiday season. The four weeks preceding Lanthier's accident were during the Christmas and New Year holidays. We also find of importance the fact that Lanthier was never offered medical insurance, even if she testified that she would not have accepted it because her husband had such coverage through his employment.
Finally, Family Dollar argues, and we agree, that Lanthier would receive almost ninety percent of her average monthly wage if she is paid benefits based on a forty hour work week. This would contravene the spirit and intent of the workers' compensation law, which only guarantees an employee sixty-six and two thirds percent of her weekly wage. Considering the conflicting testimony as to the number of hours Lanthier actually worked, we cannot say that the workers' compensation judge was unreasonable in finding that she was a part-time employee. Accordingly, the judgment of the workers' compensation judge finding that Lanthier was a part-time employee of Family Dollar is affirmed. This assignment of error is dismissed as being without merit.

HEARSAY TESTIMONY
We note that Lanthier argues that Guidry's testimony concerning the payroll mistake was hearsay and the workers' compensation judge erred in allowing it into evidence and in relying on it in reaching his conclusion.
The workers' compensation judge allowed the testimony into evidence based on the relaxed rules on hearsay as they pertain in a workers' compensation setting. We agree. La.R.S. 23:1317(A) states in part that "[t]he workers' compensation judge shall not be bound by technical rules of evidence or procedure other than as herein provided, but all findings of fact must be based upon competent evidence." In Chaisson v. Cajun Bag & Supply Co., 97-1225, pp. 12-13 (La.3/4/98), 708 So.2d 375, 382, the supreme court stated:
To give effect to the more relaxed evidentiary standards in LSA-RS 23:1317, we hold that the hearing officer has the discretion to admit hearsay evidence in worker's compensation proceedings. We further hold that such evidence can qualify as "competent evidence," provided that the evidence has some degree of reliability and trustworthiness and is of the type that reasonable persons would rely upon. This determination must be made on a case-by-case basis under the particular facts and circumstances. The reviewing court must evaluate the competency of the evidence under the manifest error standard.
The information relied upon by Guidry was clearly within the ambit of her personal *1218 knowledge as the manager of the Eunice Family Dollar store. Her testimony, therefore, is reliable and trustworthy and, by extension, sufficiently competent. Accordingly, we find no merit to Lanthier's claim that the workers' compensation judge erroneously relied on such testimony in his reasons for judgment.

CONTINUING COMPENSATION BENEFITS
In her third assignment of error, Lanthier argues that the workers' compensation judge erred in finding that she was able to return to her previous job duties and that she was no longer entitled to weekly compensation benefits.
Lanthier was first seen by Dr. Heinen, who restricted her from working on March 19, 1999. He later referred her to Dr. Nason, who treated her lower back, hip, and hand injuries, and performed two surgeries on her right hand. On July 29, 1999, after her first surgery, Lanthier resumed light duty employment. Sometime thereafter, she developed trigger thumb of her right thumb, which resulted in her undergoing a second surgery on March 14, 2000. Dr. Henderson evaluated Lanthier's right hand, and Dr. Gidman evaluated her hand and back injuries twice at the request of Family Dollar.
On July 19, 2000, Dr. Henderson released Lanthier to full work status without any restrictions, finding that she had reached maximum medical improvement and that she had no permanent partial disability rating from the accident. On July 26, 2000, Dr. Nason released her to return to work at a light duty status. Contrary to Dr. Henderson, he stated that:
[I]t would be acceptable for her to return to work on a light duty basis with the same limitations she had previously. She recently was re-evaluated by Dr. Henderson, who felt that she could be released to full duty work. I think it best that she go back to limited duty to at least begin with.
There is some question as to whether Dr. Gidman released Lanthier to full or restricted duty.
In his reasons for judgment, the workers' compensation judge stated:
The next issue is whether Ms. Lanthier is entitled to receive indemnity benefits. The medical records of Dr. Gregory Gidman and Dr. Harold Henderson (sic) show that Ms. Lanthier was released to full duty by July 19, 2000. Dr. Nason, her choice of physician, released her to return to restricted duty on July 26, 2000. Dr. Henderson, who was specifically chosen by Ms. Lanthier with regards to her hand injury, has released her to full duty.
Based on the medical records introduced into evidence and the fact that I find Dr. Henderson to be her treating physician, I find that after July 26, 2000, indemnity benefits are not owed to Ms. Lanthier.
Although the workers' compensation judge listed Dr. Henderson as Lanthier's treating physician, we think that he intended to find that Dr. Nason was her treating physician based on his use of July 26, 2000, as the date weekly compensation benefits were no longer owed to her. However, no matter what he really intended, we find that Lanthier was released to a light-duty work status on July 26, 2000, with regard to both her lower back and her hand injuries. Dr. Henderson only released her to return to work with regard to her hand injury, and Dr. Gidman's reports fail to specifically state that Lanthier was ever released to any type of work status. Although the workers' compensation judge was correct in finding that Lanthier was no longer entitled to weekly *1219 compensation benefits after July 26, 2000, we find that he erred in terminating those benefits since her attempt to return to work at a light-duty status was refused by Family Dollar. Accordingly, since Lanthier proved that she was unable to earn ninety percent of her pre-injury wages, Family Dollar had the burden of proving her earning capacity. La.R.S. 23:1221(3)(c)(i). Since it failed to present any evidence showing this, we find that the average monthly wage Lanthier was able to earn after being released to light-duty status by Dr. Nason should be factored in as zero. See Wiley v. Grand Casino Avoyelles, 98-1468 (La.App. 3 Cir. 4/21/99), 731 So.2d 518, writ denied, 99-2032 (La.11/5/99), 750 So.2d 180. Thus, we find that Lanthier is entitled to monthly supplemental earnings benefits in the amount of $491.78.[1]
Accordingly, the judgment of the workers' compensation judge terminating Lanthier's weekly compensation benefits is reversed and she is awarded monthly supplemental earnings benefits in the amount of $491.78, commencing on July 26, 2000, and running through the present.
We further find that Lanthier was entitled to monthly supplemental earnings benefits for the period of time that she was released to light-duty status between July 29, 1999 and March 14, 2000. At that point, she was working twenty hours per week at $5.50 per hour, for an average weekly wage of $110. Since this is less than ninety percent of her pre-accident wages, Lanthier was entitled to supplemental earnings benefits of $176.44 per month.[2] Judgment will be entered accordingly.

PENALTIES AND ATTORNEY'S FEES
In her final assignment of error, Lanthier argues that the workers' compensation judge erred in failing to find that she was entitled to additional penalties and attorney's fees. In support of her argument, she claims that Family Dollar failed to pay her the proper amount of weekly compensation benefits for a period of over two months, from March 19, 1999 through May 28, 1999. At that time, it corrected Lanthier's benefits from $98 to $114.35. She further seeks penalties for Family Dollar's failure to pay her supplemental earnings benefits between July 29, 1999 and March 14, 2000, when she was released to light-duty work.
When Lanthier was restricted from working, Family Dollar responded by providing medical treatment and indemnity benefits. Stephanie Nadler, the insurance adjustor handling her claim for Travelers, testified that she initially began making payments in the amount of $98 per week. These payments began on March 26, 1999, when she learned that Dr. Heinen had restricted Lanthier from work effective March 19, 1999. The payments continued until May 28, 1999, when Nadler realized that amount was incorrect and increased it to $114.35 per week. Lanthier continued receiving weekly compensation benefits until July 29, 1999, when she resumed work after her first surgery. Although Family Dollar reimbursed Lanthier for its *1220 mistake, the record reflects that it did not reasonably controvert Lanthier's claim to be paid the increased amount to which she was entitled. Therefore, we award an additional penalty of $2,000 for Family Dollar's failure to timely pay the increased amount of indemnity benefits.
Since we have already determined that Lanthier was entitled to supplemental earnings benefits for the period between July 29, 1999 and March 14, 2000, we find that she is entitled to a penalty of $2,000 for Family Dollar's failure to reasonably controvert her entitlement to these benefits. Finally, we believe that Lanthier is entitled to an additional $4,500 in attorney's fees for work performed at the trial level, and $3,000 for work performed on appeal. See Smith v. Quarles Drilling Co., 01-251 (La.App. 3 Cir. 10/3/01), 801 So.2d 1128. Lanthier's counsel spent at least sixty-one hours working on this case prior to trial. Additionally, the skill and persistence exhibited by counsel resulted in substantial benefit to Lanthier. The amounts we award are intended to provide full recovery to able counsel in recognition of the services he rendered and the result he obtained for his client. See McCarroll v. Airport Shuttle, Inc., 00-1123 (La.11/28/00), 773 So.2d 694.

CONCLUSION
For the foregoing reasons, the judgment of the workers' compensation judge is reversed insofar as it finds that the plaintiff, Nadine Lanthier, was not entitled to compensation benefits after July 26, 2000. We now order, adjudge, and decree that she is entitled to monthly supplemental earnings benefits in the amount of $176.44 for the period between July 29, 1999 and March 14, 2000, and to monthly supplemental earnings benefits of $491.78 from July 26, 2000, through the present. We further amend the judgment to award Lanthier additional penalties of $2,000 for Family Dollar's failure to timely pay the correct weekly indemnity benefits and $2,000 for its failure to pay supplemental earnings benefits from July 29, 1999 through March 14, 2000, for a total award of $6,000 in penalties. We amend the workers' compensation judge's award of attorney's fees to include an additional award of $4,500 for work performed at the trial level, for a total of $6,500, along with $3,000 for work performed on appeal. The judgment is affirmed in all other respects. The costs of this appeal are assessed twenty-five percent to the plaintiff-appellant, Nadine Lanthier, and seventy-five percent to the defendant-appellee, Family Dollar Store.
AFFIRMED IN PART; AMENDED IN PART; AND RENDERED.
THIBODEAUX, J., concurs in part and dissents in part and assigns written reasons.
THIBODEAUX, J., concurring in part and dissenting in part.
I concur in the majority opinion except with respect to the issue of full-time versus part-time employment of Ms. Lanthier. Because of this disagreement, the benefits flowing to Ms. Lanthier will naturally differ from those ordered by the majority.
I am convinced that the trier of fact was manifestly erroneous in classifying Ms. Lanthier as a part-time employee of Family Dollar. The evidence establishes that she was a full-time employee. Consequently, her compensation benefits should be calculated on an average weekly wage of $5.50 per hour, multiplied by a presumption of forty hours per week. Any fringe benefits should also be factored into this weekly compensation calculation. Batiste v. Capitol Home Health, 96-799 (La. App. 3 Cir. 5/7/97); 699 So.2d 395.
*1221 Louisiana Revised Statutes 23:1021(9) defines a part-time employee as one who as a condition of his hiring knowingly accepts employment that customarily provides for less than forty hours per week and is classified as part-time by the employer.
Family Dollar did customarily provide for less than forty hours per week and its testimonial evidence reveals that the claimant was considered to be part-time by her employer. According to Family Dollar, Ms. Lanthier requested part-time employment, was hired as such, and was never technically classified as full-time. She was never regularly assigned more than thirty hours per week, and the only exception to this was during holiday periods and at a time when a co-employee was ill. However, Ms. Lanthier claims to have had expectations of full-time employment and claims to have been generally scheduled to work thirty to thirty-two hours per week. The objective, documentary, and other testimonial evidence support the claimant's position.
First of all, the handbook issued to Ms. Lanthier defines a "Regular, Full-Time" employee as "[a]n associate hired for an indefinite period which is expected (but not guaranteed) to be more than 90 days with a regularly assigned work week averaging thirty hours or more." A "Regular, Part-Time" employee is defined in the handbook as "[a]n associate hired for an indefinite period which is expected (but not guaranteed) to be more than 90 days with a regularly assigned workweek averaging less than 30 hours." Though Ms. Guidry testified that Ms. Lanthier was not regularly assigned to a workweek averaging thirty hours or more, time sheets indicate that the claimant averaged about thirty-one or thirty-two hours per week. Moreover, the wage records indicate payment for work in excess of thirty hours per week, at least for the four-week period before the accident. Ms. Lanthier therefore falls within the parameters of Family Dollar's handbook definition of a full-time employee. Family Dollar claims that the full-time/part-time classifications were in the context of fringe benefit availability only. However, the handbook clearly says that the classifications apply to both Family Dollar's benefit programs and to its other policies described in the handbook.
The employee handbook says that "Family Dollar provides paid vacation for all eligible, regular, full-time associates who work an average of 30 or more hours per week during the months of October through March." Present in the record was the check stub for the check that Ms. Lanthier said she received as vacation pay. Ms. Guidry testified that issuance of such check was the result of computer error. However, even if the check was erroneously issued, my conclusion still stands. I note here our recognition that Ms. Lanthier did not receive hospitalization benefits. However, as she explained at trial, she was covered through her husband's employment policy.
Also contributing to Ms. Lanthier's expectation of full-time employment was Family Dollar's admission in its answers to interrogatories that Ms. Lanthier was employed for thirty hours per pay period during each of the four complete weeks prior to her injury, including the beginning and ending day of each weekly pay period. Family Dollar introduced no payroll records contrary to this evidence. "Louisiana jurisprudence holds that when a litigant destroys, conceals, or fails to produce evidence within his or her control, it gives rise to an adverse presumption that had the evidence been produced, it would have been detrimental to the litigant's case." Allstate Ins. Co. v. Ford Motor Co., 00-710, *1222 p. 4 (La.App. 3 Cir. 11/14/00); 772 So.2d 339, 342; Rodriguez v. Northwestern Nat'l Ins. Co., 358 So.2d 1237 (La.1978).
My conclusion is buttressed by what our circuit said in Johnson v. Travelers Ins. Co., 509 So.2d 519, 520-521 (La.App. 3 Cir.), writ denied, 510 So.2d 378 (La.1987),
that David Johnson was not a part-time employee because the evidence failed to establish that `as a condition of his hiring' he knowingly accepted employment that (1) customarily provides for less than forty hours per work week. The fact that the employer considered him part-time (See Simmoneaux's testimony) has no bearing on this ultimate issue. The employer's subjective attitude must be coupled with an objective finding that the employee knowingly accepted employment under those limited conditions at the time of his hiring.
Additionally, we said that "[i]t is incumbent upon employers to define `part-time' status of certain employees and to establish some procedure to satisfy the criterion that the employee had knowingly taken a part-time job." Id. at 521.
When considering the totality of the circumstances in this case in consideration of Ms. Lanthier's expectations of full-time employment, the handbook definition of full-time employment, time sheet indications, and Family Dollar's admissions to interrogatoriesI conclude that the court below was manifestly erroneous in finding Ms. Lanthier to be a part-time employee.
If Ms. Lanthier were to be classified as a full-time employee, she would be entitled to indemnity benefits in the weekly amount of $148.92 from March 19, 1999 to July 28, 1999 and from March 14, 2000 to July 26, 2000, subject a credit for any payments made by Family Dollar to her. Additionally, she would be entitled to supplemental earnings benefits from July 29, 1999 to March 14, 2000 based on an average weekly wage of $223.28 and earnings of $113.28 (based on $5.50 per hour at twenty hours per week), and to supplemental earnings benefits from July 26, 2000 to the present based on zero earning capacity.
For the foregoing reasons, I respectfully dissent in part.
NOTES
[1] Supplemental earnings benefits equals sixty-six and two-thirds percent of the difference between the average monthly wages at time of injury and average monthly wages earned by the employee in any month thereafter. La. R.S. 23:1221(3)(a). Lanthier's average weekly wage (AWW) $171.55 = 31.19 hours (30.75 + 36.25 + 28.75 + 29 hours ÷ 4) × $5.50 per hour. Her average monthly wage at time of injury was $737.66 ($171.55 AWW × 4.3)$0 = $737.66 × 2/3 = $491.78.
[2] $737.66 (171.55 AWW × 4.3)-$473 ($110 AWW × 4.3) = $264.66 × 2/3 = $176.44.