# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT

## 22-580


SILTON ARDOIN

VERSUS

GDE REVOVATIONS, INC.
K&C SHEET METAL AND ROOFING


**********

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION, DISTRICT 4
PARISH OF LAFAYETTE, NO. 14-05370
ANTHONY PALERMO, WORKERS COMPENSATION JUDGE

**********

## CANDYCE G. PERRET
## JUDGE

**********

Court composed of Candyce G. Perret, Guy E. Bradberry, and Wilbur L. Stiles, Judges.


**AFFIRMED.**

Jennifer B. Valois
Barber Valois Law Firm
1704 W. University Avenue
Lafayette, LA   70506
(337) 232-9893
COUNSEL FOR PLAINTIFF/APPELLANT:
	Silton Adoin

Jason E. Wilson
Kevin W. Fouquier, II
Galloway, Johnson, Tompkins, Burr & Smith
3861 Ambassador Caffery Parkway, Suit 300
Lafayette, LA   70503
(337) 735-1760
COUNSEL FOR DEFENDANTS/APPELLEES:
	GDE Revovations, Inc.
	Granite State Insurance Company

K&C Sheet Metal and Roofing, Inc.
792 McKendree Lake Way
Lawrenceville, GA   30043-4185
DEFENDANT

**PERRET, Judge.**

Silton Ardoin, Claimant, appeals a workers' compensation judgment rendered in favor of GDE Renovations and K&C Sheet Metal and Roofing, Inc., dismissing his claims with prejudice. For the following reasons, we affirm.

**FACTUAL AND PROCEDURAL HISTORY:**

Mr. Ardoin filed a Disputed Claim for Compensation on August 11, 2014, alleging that he fell through a roof at the Steeplechase Apartment complex while working for GDE Renovations, Inc. ("GDE") and K&C Sheet Metal and Roofing, Inc. ("K&C"). GDE was hired to repair the roof of one of the apartment buildings and hired K&C as its subcontractor. The original alleged date of the incident was June 19, 2014. According to Mr. Ardoin, he sustained injuries to his right knee, hip, and left leg for which he sought medical treatment. Mr. Ardoin amended his claim several times, including on June 2, 2021, to amend the date of incident to May 19, 2014, and to claim injury to both knees and his lower back; and on July 22, 2021, to add a claim for spoliation/adverse presumption of the evidence as well as penalties, attorney fees, judicial interest, and costs.

GDE has denied the claim entirely and has not paid benefits. GDE further claims K&C was its subcontractor at the time of the alleged accident on the Steeplechase Apartment project, but denies that Mr. Ardoin was an employee of either GDE or K&C. GDE filed a third-party demand against K&C on July 24, 2017. A preliminary default judgment on the third-party demand was signed on December 4, 2017.

At the September 23, 2021 trial on the merits, the workers' compensation judge ("WCJ") heard testimony from Mr. Ardoin as well as Howard Sterling, who

testified that he witnessed Mr. Ardoin's accident. Andrew Copeland, GDE's project manager on the site, testified on behalf of GDE. K&C did not appear.

At trial, Mr. Ardoin testified that he has a seventh-grade education. After school, he worked with racehorses, riding them for their exercise. In fact, at the time of this accident, he had recently been licensed by the Louisiana Racing Commission to exercise horses. However, since this accident, he has not been able to ride horses. He also testified that he is often homeless.

As to GDE and the accident itself, Mr. Ardoin recalled working for GDE on a roofing project in May of 2014. A man he knew named Calvin Coleman provided Mr. Ardoin with information regarding the job. Mr. Ardoin recalled being provided the name "Gustavo" and testified that Gustavo was the "boss" at the Steeplechase job. He rode to the jobsite with Calvin and was "hired" by Gustavo at $120.00 per day and was to be paid in cash. He recalled Gustavo wore "[a] white and blue shirt with [GDE] on it." Mr. Ardoin never signed anything when he arrived. Instead, Gustavo signed Mr. Ardoin's name in a notebook. Mr. Ardoin started work on a Saturday. He returned Monday, May 19, and that is the day the accident occurred.

Mr. Ardoin explained that he was carrying shingles around 2:30 p.m on May 19, 2014. At the time, he was placing bundles of shingles on top of the roof. He was on the roof by himself, and the shingles were handed to him by another laborer who brought them up the ladder. As he was stacking the bundles, he walked close to the edge and the plywood, which was rotten, broke and his right foot went through the roof. Thereafter, Gustavo came up on the roof and took pictures of the hole. Then, despite Mr. Ardoin indicating that he was injured and needed to see a doctor, Gustavo drove Mr. Ardoin home. The following day Mr. Ardoin went to

2

the emergency room. He did not return to the jobsite and was not paid any benefits by GDE.

On cross-examination, Mr. Ardoin testified that he was not provided with any safety equipment, such as a harness, on the jobsite. He also verified that in his deposition he stated a man named "Joe" was the person handing him the bundles of shingles while he was on the roof, and that "Joe" witnessed the accident.

Mr. Ardoin then called Howard Sterling on his behalf. Mr. Sterling testified that he worked on the roof at Steeplechase Apartments. He explained that some Hispanic men approached him and asked if he wanted to work, that he would be a helper, and would be paid approximately $100 per day. Mr. Sterling does not recall the name of the company he went to work for, and he was paid in cash every week and worked for three weeks. He did recall, however, that Mr. Ardoin was also working as a helper on that job.

Regarding Mr. Ardoin's accident, Mr. Sterling explained that he brought the bundles of shingles up the ladder and that Mr. Ardoin was doing the same. Mr. Sterling testified that there was a soft spot on the roof and Mr. Ardoin fell through the spot, hurting his ankle. He explained that he was in front of Mr. Ardoin when the accident occurred. Mr. Sterling testified that he helped Mr. Ardoin down the ladder. Mr. Sterling recalled that Mr. Ardoin left that day and attempted to return the following day, however, he was limping.

Mr. Sterling testified that the Hispanic men were doing the roofing job and that he never reported to the managers at the apartment complex or to Mr. Copeland, who counsel pointed out to Mr. Sterling in the courtroom. Mr. Sterling specifically denied ever seeing Mr. Copeland at the worksite.

On cross-examination, Mr. Sterling denied that he was required to sign a daily log for each day that he worked while on the Steeplechase job despite counsel showing Mr. Sterling his name on the daily log. When presented with his signature on the log, Mr. Sterling denied that it was his signature. He then signed the paper in court for comparison, which was introduced into evidence as Exhibit M.

Andrew Copeland testified as the project manager for GDE. He supervised the Steeplechase Apartment project. Mr. Copeland explained that Steve Stephens[1] was his senior project manager at GDE and that GDE subcontracted with K&C for this job. K&C's foreman/crew leader on the jobsite was a man named "Jessie Ruiz." Mr. Copeland testified that he was the only GDE employee on the job site and that the crew was provided by K&C. He testified that workers were required to wear a GDE shirt, which was a white t-shirt with red and black writing or numbers. Mr. Copeland also explained that the Steeplechase owners required a daily log of all workers on the job every day. Mr. Copeland added a "project update narrative" to the daily logs, which included information such as weather updates that impacted their work and what phase of the project was going on each day. The timesheets were verified by Mr. Copeland and admitted into evidence.

Using the project update narratives on the daily logs, Mr. Copeland explained the process of replacing a roof: first the roof is torn down to the plywood, all rotten plywood is identified and replaced, two layers of felt are laid down, tin tags are placed to reinforce the shingle bed, then, lastly, the new shingles are put down.

---

[1] We use the spelling of "Stephens" found in the deposition of Mr. Walton Murph Stephens, III, although the trial transcript spells this witness's name as "Stevens."

Mr. Copeland's project update narrative for May 20, 2014, had a note that an accident occurred on May 19, 2014, around 5:45 p.m. The narrative indicates that Jessie Ruiz, who Mr. Copeland identified as Hispanic, the foreman for K&C, his crew leader, "fell through [a] rotten piece of decking last evening about 5:45 pm broke hole in ceiling of sheet rock in living room—He[']s not injured." Mr. Copeland admitted that he did not witness the accident, but testified that he climbed on the roof, checked the roof, then went with Mr. Ruiz and the Steeplechase maintenance person to inspect the interior damage.

Mr. Copeland denied that Mr. Ardoin was an employee and denied that he worked on the Steeplechase job in 2014. He reached this conclusion based on his time sheets because he did not know all the workers' names. Mr. Copeland also believed Mr. Ardoin was not on his jobsite because Mr. Ardoin's testimony about carrying shingles up a ladder was contradictory to the equipment that was available on the jobsite, such as a motorized ladder lift. Furthermore, Mr. Copeland explained that on May 19, 2014, the damaged decking was being replaced. Therefore, the site was not ready for the first bundle of shingles, which would have remained on the ground until after the decking was replaced and the felt was installed. He also denied that helpers climbed onto the roof, explaining that their job was to load the shingle bundles from the pallet on the ground onto the lift. Mr. Copeland explained that K&C provided the equipment, it was not rented, and admitted that he has no photographs or evidence of the equipment at the worksite.

Both parties submitted exhibits. Mr. Ardoin's exhibits included, amongst others, his medical records and the deposition of Mr. Stephens. Mr. Ardoin's medical records indicate that he presented to the University Hospital and Clinics emergency department on May 20, 2014, with right knee and lower back pain after

falling through a roof at home the prior day. Other records from June 2014, also indicate he was injured in May. However, the histories taken at a July 21, 2014 visit and an October 23, 2014 visit indicate that the injury occurred in June, not May.

Mr. Ardoin was eventually referred to an orthopedic clinic. Mr. Ardoin continued presenting to the emergency room and orthopedist with complaints of bilateral leg pain through 2020. It was recommended that he have a total right knee replacement, but that surgery has not been performed.

Both parties submitted the deposition of Walton Murph Stephens, III, who was the senior project manager for GDE at the time of the alleged incident. Importantly, Mr. Stephens testified that, for this job at the Steeplechase Apartments, all workers were to be identified with GDE shirts and a log of all workers was required each day by the owners of the apartment complex. Mr. Stephens also testified that, while accident reports are required for accidents involving GDE employees, GDE does not require accident reports for subcontractors and subcontractor employees.

GDE submitted its workers' compensation insurance policy as well as its subcontract with K&C. The subcontract indicates that the work would take place between May 13, 2014, and May 23, 2014; however, according to the testimony and other evidence, the work continued into the beginning of June. The subcontractor was to provide all labor, tools, and equipment, as well as verifying that it carried workers' compensation insurance. The contract describes the scope of the work as including the removal of 320 square feet of rotted decking per building, and then describes the manner in which the roofing was to be replaced. The contract also includes a "Contractor Dress Code and Conduct Requirements"

6

for contractors, contractor employees, and sub-contractors. The contractor was to report to the Steeplechase leasing office and provide Daily Log Sign In Sheets.

The Daily Log Sign In Sheets were also admitted into evidence. The first log sheet is dated May 14, 2014, and the last is June 2, 2014. Mr. Ardoin's name does not appear on any of the log sheets. The names of Gustavo and Howard Sterling do appear, but not until May 21, 2014, and only one and two times, respectively, after that date. For May 17, 2014, the day Mr. Ardoin alleges that he was hired by Gustavo, there is no Gustavo signed in. For May 19, 2014, the day of the alleged accident, there is no Gustavo or Howard Sterling signed in. There is, however, a Jessie Ruiz signed in that day. The project update narrative for May 19th states, "Replacing damage decking on bldg. N. *All sheets to be replaced will be numbered and marked." The following day, May 20, 2014, the narrative states, "Replaced all rotten decking, beginning felt and shingle installations. *Incident— United N-26—Jessie fell through rotten piece of decking last evening about 5:45 pm broke hole in ceiling of sheet rock in living room. He[']s not injured."

After considering the exhibits and testimony as well as post-trial briefs, the WCJ issued oral reasons for ruling on January 7, 2022. In those oral reasons the WCJ also found that there was no evidence of spoliation and no judicial confession by GDE regarding the employment status of Mr. Ardoin by K&C. The WCJ specifically found that Mr. Ardoin was not a credible witness, noting that from the outset, Mr. Ardoin changed the date of the incident three times as well as the "tenor of how the accident happened." The WCJ found that the following made Mr. Ardoin not credible as a witness:

> Mr. Ardoin described a time that he started work that was completely contrary to the actual start times of this particular project. Mr. Ardoin also failed to note the equipment that was available at the

job site that was being used. Mr. Ardoin, in his date for the accident, described laying shingles on the roof when the records show that at the time and date that the accident allegedly happened, they were not laying shingles on the roof. The roof was being cleared of old shingles and felt.

Also, the descriptive manner that Mr. Ardoin gave to the accident is completely contradicted by Mr. Copeland in that one does not lay shingles on a rotten roof . . . . and therefore[,] his version of the accident simply does not make logical sense.

It is also important to note that the witness called on behalf of Mr. Ardoin, Howard Sterling's testimony completely contradicts Mr. Ardoin's version of the accident, the time, the manner of what happened, where people were, and calls into further question whether an accident happened in this case.

The Court also notes that the medical records do not corroborate an accident while working for GDE Renovations. The medical records seem to indicate an accident that occurred at a completely different site.

The WCJ court found that the evidence disputed whether Mr. Ardoin was ever employed by GDE and found that Mr. Ardoin did not prove by a preponderance of the evidence that an accident occurred. The WCJ also rendered written reasons on January 25, 2022. These reasons did not make any additional findings but did set forth the jurisprudence that the WCJ relied upon in making the evidentiary determinations previously stated in its oral reasons.

Thereafter, Mr. Ardoin filed a Motion for New Trial alleging that the judgment was not final because it was silent regarding K&C. The motion also noted that the WCJ's oral reasons indicated that it decided evidentiary issues without providing the parties notice that said issues were decided, which prejudiced Mr. Ardoin's appeal rights on those issues. The WCJ denied the motion in court, and signed an order to that effect on March 24, 2022, but corrected the judgment via an Amended Final Judgment signed on March 18, 2022, dismissing Mr. Ardoin's claims against both GDE and K&C. Thereafter on March 28, 2022,

8

the WCJ rendered an Oral Ruling, reversing its decision to exclude Mr. Ardoin's proffered Exhibit 12, a summary of an interview of Calvin Coleman, and clarifying other evidentiary rulings that were deferred to post-trial briefs following the September 23, 2021 trial on the merits.

Specifically, the March 28, 2022 oral reasons state:

> This matter came for a motion for new trial in this matter because the original judgment did not reflect that K&C Roofing was a party in this case. The Court after reviewing the motion for new trial determined that the prior ruling left out the admissibility of certain evidence. Therefore, the Court is admitting page 12 of Plaintiff's Exhibit 2, admitting Plaintiff's Exhibit 3 and is admitting Plaintiff's Exhibit 4, and also admitting the Plaintiff's Proffer of the report by Calvin Coleman.[2]

Mr. Ardoin did not receive notice of this oral ruling before filing his Motion for Appeal on April 6, 2022. It was not until his counsel was preparing the appellant brief that the ruling was discovered. This court also previously ordered the record corrected and the appellate record supplemented on October 26, 2022. *See Ardoin v. GDE Renovations, Inc.*, 22-580 (La.App. 3 Cir. 10/26/22) (unpublished opinion).

On appeal, Mr. Ardoin asserts four Assignments of Error:

> 1. The WCJ committed legal error by erroneously excluding Appellant's Trial Exhibit 12: Recorded Statement of Calvin Coleman at trial, then reversing the exclusion and admitting the proffered evidence after judgment.

> 2. The WCJ committed legal error by applying the wrong legal standard to Appellant's claim for [spoliation] seeking the adverse presumption of the evidence Appellee GDE failed to produce.

---

[2] Portions of Exhibits 2 and 3, as well as Exhibit 4 were objected to by GDE at trial. The WCJ reserved the right to include those exhibits if, after hearing the testimony, it was determined those exhibits were relevant and pertinent to the case. However, the WCJ stated he would allow the parties to address those exhibits in post-trial briefs. In his reasons for ruling regarding the January 18, 2022 Judgment, the WCJ failed to specify whether these exhibits were admitted. Thus, at the Motion for New Trial, both parties requested that the WCJ address and clarify whether these exhibits were admitted.

3. The WCJ committed legal error by applying the wrong legal standard to Appellant's request for a finding that Appellee GDE made a judicial admission of fact in GDE's Motion for Preliminary Default, regarding Appellant's employment status with Appellee K & C, pursuant to [La.Civ.Code] Art. 1853.

4. The WCJ committed legal error in liberally construing the factual disputes in favor of the employers, in violation of [La.R.S. 23:]1020.1(D)(2).

Based on these alleged legal errors, Mr. Ardoin argues that a de novo review is required and that this court should either remand for a new trial or render judgment accordingly.

**STANDARD OF REVIEW:**

The factual findings of the WCJ are reviewed on appeal using the manifest error standard of review. *Numa C. Hero & Son v. Leleux*, 15-305 (La.App. 3 Cir. 10/28/15), 178 So.3d 595. "Whether the burden of proof has been satisfied and whether testimony is credible are questions of fact to be determined by the WCJ. Under the manifest error rule, the reviewing court does not decide whether the factfinder was right or wrong, but only whether its findings are reasonable." *Id.* at 598 (citations omitted). "Unless the WCJ's findings of fact are found to be manifestly erroneous or clearly wrong, those findings will not be set aside. A factfinder's choice can virtually never be wrong if the evidence presents two reasonable views of the facts." *Jackson v. Aramark Healthcare Servs.*, 17-503, p. 13 (La.App. 3 Cir. 2/7/18), 239 So.3d 878, 888 (citations omitted).

The Louisiana Supreme Court has explained:

When findings are based on determinations regarding the credibility of witnesses, the manifest error—clearly wrong standard demands great deference to the trier of fact's findings; for only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said. Where documents or objective evidence so contradict the witness's story, or the story itself is so internally inconsistent or

10

implausible on its face, that a reasonable fact finder would not credit the witness's story, the court of appeal may well find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination. But where such factors are not present, and a factfinder's finding is based on its decision to credit the testimony of one of two or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong.

*Rosell v. ESCO*, 549 So.2d 840, 844-45 (La.1989) (citations omitted).

**ON OUR OWN REVIEW:**

This appeal was taken from an amended judgment of the trial court signed on March 18, 2022. The amended judgment corrected an error on the January 28, 2022 Judgment, which did not address Mr. Ardoin's claims against K&C. The amended judgment reaffirmed the prior adjudication, considering the trial on the merits held on September 23, 2021, and the oral reasons assigned on January 7, 2022, in favor of GDE and against Mr. Ardoin and dismissed Mr. Ardoin's claim for benefits, penalties, and attorney fees. The amended judgment then added the following regarding K&C:

> **IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that there be judgment in favor of K&C Sheet Metal and Roofing, and against Claimant, Silton Ardoin.
>
> **IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that Silton Ardoin's claim for indemnity benefits, medical benefits, penalties and attorney fees is denied and the above captioned matter is dismissed with prejudice.

As discussed in the prior facts, the error was brought to the WCJ's attention via Mr. Ardoin's Motion for New Trial. The Motion for New Trial also raised evidentiary issues. The transcript for the contradictory hearing indicates that both parties admitted K&C needed to be added to the judgment and that the record needed to be clarified regarding the admission of evidence.

11

The WCJ also agreed there was an error in the original judgment and stated he would deny the motion for new trial, but amend the judgment to properly dispense with the claims against both GDE and K&C. The judgment was amended and signed on March 18, 2022. An Order was signed on March 24, 2022, denying Plaintiff's Motion for New Trial and granted "Defendants, GDE Renovations, Inc[.], and Granite State Insurance Company's Oral Motion for an Amended Judgment" and stated that "an Amended Judgment from the Court will be forthcoming."

Louisiana Civil Code of Procedure Article 1951 states (emphasis added):

On motion of the court or any party, a final judgment may be amended at any time to alter the phraseology of the judgment or to correct deficiencies in the decretal language or errors of calculation. The judgment may be amended only after a hearing with notice to all parties, except that a hearing is not required if all parties consent or if the court or the party submitting the amended judgment certifies that it was provided to all parties at least five days before the amendment and that no opposition has been received. **A final judgment may not be amended under this Article to change its substance**.

We note that substantive changes to judgments require the court to follow one of the prescribed methods for making such a change or the judgment will be deemed an absolute nullity. *Washington v. Taylor*, 21-80,21-81 (La.App. 4 Cir. 1/26/22), 334 So.3d 1060. The prescribed methods for making substantive changes are "1) the timely motion for new trial; 2) timely appeal; or 3) petition or action for nullity." *Id.* at 1070 (quoting *Paragon Lofts Condominium Owners Ass'n, Inc. v. Paragon Lofts, L.L.C.*, 10-419, p. 2 (La.App. 4 Cir. 1/14/11), 55 So.3d 970, 972, *writ denied*, 11-314 (La. 4/1/11), 60 So.3d 1254). However, the supreme court has indicated that a judgment may be amended substantively with the consent of the parties. *Villaume v. Villaume*, 363 So.2d 448 (La.1978). In *Villaume*, the supreme court stated, "the amended judgment accomplished the

12

same result as would have been obtained had the substantive change been effected at a new trial or on appeal[.]" *Id*. at 451.

We find a similar result here. The parties both agreed that the January 18, 2022 Judgment required an amendment to add K&C as a party and that adjudication as to K&C was required. While this is a substantive change, it was done with the consent of the parties and accomplished the same result that granting a motion for new trial or appeal would have achieved on this issue; thus, the nullification of the judgment is not required in this case.

**ASSIGNMENT OF ERROR NUMBER ONE:**

In his first assignment of error, Mr. Ardoin argues that the WCJ erred when it excluded his Exhibit 12 at trial, but then after judgment was rendered, admitted the proffered exhibit on March 28, 2022. Exhibit 12 is a three-page "Report of Investigation" by an AIG Global Investigative Services investigator and is a synopsis of an interview conducted with Calvin Coleman.

At trial, GDE raised a work product issue related to the document's discovery. GDE argued that the document was inadvertently produced to Plaintiff's counsel with other trial exhibits and that it is not discoverable. The WCJ allowed Mr. Ardoin to proffer the document. The WCJ stated that he would allow the parties to address the work product issue regarding the proffer in post-trial briefs. On January 7, 2022, the WCJ issued an oral ruling after reviewing the post-trial briefs. Despite the WCJ stating at trial that he would rule on evidentiary issues, such a ruling was not made. However, on March 28, 2022, after the hearing on Mr. Ardoin's Motion for New Trial, the WCJ acknowledged that the prior ruling left out the evidentiary rulings, then admitted the evidence, including the proffer.

13

In his appellate brief, Mr. Ardoin asserts that "the WCJ committed prejudicial error [by] failing to admit all admissible evidence at the beginning of trial, causing Appellant to suffer substantial injustice in the presentation of his case at trial." Mr. Ardoin asserts that the existence of the report contradicts the WCJ's oral finding that "no other evidence exists" of Mr. Ardoin's employment. Mr. Ardoin also argues that the WCJ's late ruling on the evidence is contrary to La.R.S. 23:1317(A)[3] and denied Mr. Ardoin the opportunity to use the exhibit to establish La.R.S. 23:1031 causation burdens. For the following reasons we do not find any merit to this assignment of error.

The exhibit itself is a synopsis of an interview conducted with Calvin Coleman by an AIG Global Investigative Services investigator on March 13, 2015; it is not a transcript of a recorded statement. The document was not produced along with the claim file and the document is not authenticated or verified in any way. No witness was called to authenticate the document at trial.

The synopsis indicates that Mr. Coleman was hired by GDE on June 17, 2014, to "carry bundles of asphalt shingles, up a ladder, to the roof of an apartment building." Mr. Coleman transported Mr. Ardoin to the worksite on June 18, 2014,

---

[3] Louisiana Revised Statutes 23:1317(A) provides:

> If an answer has been filed within the delays allowed by law or granted by the workers' compensation judge, or if no judgment has been entered as provided in R.S. 23:1316 at the time for hearing or any adjournment thereof, the workers' compensation judge shall hear the evidence that may be presented by each party. Each party shall have the right to be present at any hearing or to appear through an attorney. The workers' compensation judge shall not be bound by technical rules of evidence or procedure other than as herein provided, but all findings of fact must be based upon competent evidence and all compensation payments provided for in this Chapter shall mean and be defined to be for only such injuries as are proven by competent evidence, or for which there are or have been objective conditions or symptoms proven, not within the physical or mental control of the injured employee himself. The workers' compensation judge shall decide the merits of the controversy as equitably, summarily, and simply as may be.

and worked the entire day. Mr. Coleman quit the job thereafter but did transport Mr. Ardoin to the jobsite on June 19, 2014. When Mr. Coleman returned to pick up Mr. Ardoin at the end of the day, he was informed that Mr. Ardoin had fallen through the roof and was taken off the jobsite. Mr. Coleman also explained that the workers were to be paid weekly in cash.

Mr. Ardoin suggests that the statement supports the following facts: (1) proof that the hiring person on the jobsite was Hispanic and, therefore, an employee of K&C, (2) proof of Mr. Ardoin's employment and presence on the jobsite, (3) proof that day laborers were hauling packs of shingles up the ladder to the roof, and (4) proof that the day laborers were brought to a check cashing business and then paid in cash for their work. He argues that his burden hinged on his ability to prove the above facts, and that Mr. Coleman's statement was essential to proving these facts.

In opposition, GDE argues that the statement should not be in evidence because it was not discoverable as work product and, on appeal, argues that it is inadmissible hearsay. GDE explained that Mr. Ardoin identified Mr. Coleman as a witness on February 23, 2015, prior to Mr. Coleman being interviewed. Mr. Ardoin also had a subpoena issued in March of 2015, yet chose not to have Mr. Coleman testify at trial. The discovery propounded on GDE inquired whether GDE was in possession of any witness statements and requested that any such witness be identified. GDE responded that any statement would be work product and did not provide any further identifying information. GDE also determined that the statement could not be authenticated and GDE decided against using the report at trial. GDE explains that the report was inadvertently produced with other exhibits ahead of trial.

15

Despite the WCJ admitting the proffer after judgment was rendered and after the hearing on Plaintiff's Motion for New Trial, we ultimately find that such a late evidentiary ruling was harmless because the exhibit was incompetent evidence that the WCJ should not have relied on it making its factual determinations.

Louisiana Code of Civil Procedure Article 1424 states:

> A. The court shall not order the production or inspection of any writing, or electronically stored information, obtained or prepared by the adverse party, his attorney, surety, indemnitor, or agent in anticipation of litigation or in preparation for trial unless satisfied that denial of production or inspection will unfairly prejudice the party seeking the production or inspection in preparing his claim or defense or will cause him undue hardship or injustice. Except as otherwise provided in Article 1425(E)(1), the court shall not order the production or inspection of any part of the writing, or electronically stored information, that reflects the mental impressions, conclusions, opinions, or theories of an attorney.
>
> . . . .
>
> D. A disclosure of a communication or information covered by the attorney-client privilege or work product protection does not operate as a waiver if the disclosure is inadvertent and is made in connection with litigation or administrative proceedings, and if the person entitled to assert the privilege or work product protection took reasonably prompt measures, once the holder knew of the disclosure, to notify the receiving party of the inadvertence of the disclosure and the privilege asserted. . . .

As the fourth circuit explained in *Johnson v. Mike Anderson's Seafood, Inc.*, 13-379, p. 7 (La.App. 4 Cir. 6/11/14), 144 So.3d 125, 131 (citing *Ogea v. Jacobs*, 344 So.2d 953, 957 (La.1977)), *writ denied*, 14-1459 (La. 10/10/14), 151 So.3d 586.

> Even though a document was obtained or prepared in anticipation of litigation or in preparation for trial, the party seeking discovery may be entitled to it in certain circumstances. That party must prove that he has a substantial need for the materials in the preparation of his case, and that he is unable to obtain a substantial equivalent of the materials by other means without undue hardship.

In *Johnson*, the appellate court concluded that the plaintiffs did not meet their burden in proving a substantial need for the investigator's file, despite their claim

16

that "they would be unfairly prejudiced had they not been able to know what Mr. Copping had said about the accident shortly after it happened." *Id*. at 132. The appellate court instead concluded that the plaintiff had his own recollection of the events and Mr. Copping, who was not an eyewitness, and the investigator were both deposed and available to testify at trial. Thus, the trial court had abused its discretion in ordering the production of the report and, because the report was admitted, erred in admitting the report into evidence.

Similarly, Mr. Ardoin has not proven a substantial need for the recorded statement herein. Although he requested an adverse presumption in his post-trial brief and argued that GDE's knowledge of Mr. Coleman and his interview by the investigator, and GDE's subsequent failure to identify both obstructed Mr. Ardoin's claim, the fact is Mr. Ardoin was the person who originally identified Mr. Coleman as a witness. Mr. Ardoin identified Mr. Coleman as a witness prior to the recorded statement and even subpoenaed Mr. Coleman in 2015, but chose not to depose or call Mr. Coleman to testify. There has been no suggestion by Mr. Ardoin that Mr. Coleman was unavailable to testify.

Furthermore, pursuant to La.Code Evid. art. 801(A)(C), a statement is hearsay if it is not "one made by the declarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted." "Hearsay is inadmissible at trial unless one of the exceptions in the Code of Evidence applies. La. C.E. art. 802." *Brooks v. Reimonenq*, 10-296, p. 4 (La.App. 4 Cir. 7/21/10), 44 So.3d 824, 827.

However, we recognize the relaxed evidentiary standards in La.R.S. 23:1317. The Louisiana Supreme Court in *Chaisson v. Cajun Bag & Supply Co.*, 97-1225, pp. 10-14 (La. 3/4/98), 708 So.2d 375, 381-83, has explained:

17

[U]nder the express language of LSA–RS 23:1317, worker's compensation hearing officers are "not bound by the technical rules of evidence." *Id.* In other words, the hearing officer has the discretion to admit evidence that would otherwise be inadmissible under the Louisiana Code of Evidence. This more relaxed standard for the admissibility of evidence is the general rule in proceedings before administrative agencies. MCCORMICK ON EVIDENCE § 352 (4th ed.1992). The legislative requirement that a hearing officer's factual findings be based upon competent evidence is the safeguard that ensures that the factual findings are made on evidence that has some degree of reliability and trustworthiness, notwithstanding that the evidence might fall outside of the technical rules for admissibility. . . Although the Legislature has not defined "competent evidence," in order to give the relaxed evidentiary standard in LSA–RS 23:1317 effect, it must not be defined so narrowly as to mean only evidence that would fall within the parameters of the Louisiana Code of Evidence.

. . . .

To give effect to the more relaxed evidentiary standards in LSA–RS 23:1317, we hold that the hearing officer has the discretion to admit hearsay evidence in worker's compensation proceedings. We further hold that such evidence can qualify as "competent evidence," provided that the evidence has some degree of reliability and trustworthiness and is of the type that reasonable persons would rely upon. This determination must be made on a case-by-case basis under the particular facts and circumstances. The reviewing court must evaluate the competency of the evidence under the manifest error standard.

. . . .

. . . The Legislature in fashioning a relaxed evidentiary standard for worker's compensation proceedings envisioned the broad admission of evidence that might fall outside of the technical rules of evidence. Thus, the *admission* of such evidence is not error. However, to ensure the reliability of the factual findings, the Legislature has mandated that the hearing officer's findings be based on "competent evidence." Such a relaxed evidentiary standard brings the possibility that some incompetent evidence will be admitted. Thus, the Legislature has granted hearing officers the discretion to disregard such admitted, but incompetent evidence in reaching his factual findings. Thus, to give effect to the Legislature's intent, we hold that when a reviewing court finds incompetent evidence in the record, it must apply a manifest error standard of review, unless it is *clear* from the hearing officer's written or oral reasons for judgment or otherwise evident from the record that the hearing officer actually relied upon the incompetent evidence in arriving at his factual findings.

The document at issue is an investigator's summary of an interview conducted with Mr. Coleman and the investigator's comments. The investigator was not called to testify regarding the document, nor was Mr. Coleman. The document was not entered as part of a claim file or other record that could be certified. If the document is one of a regularly conducted business activity, no witness was provided to "explain the record-keeping procedures of the business and thus lay the foundation for the admissibility of the records." *Brooks*, 44 So.3d at 828. Furthermore, the summary indicates that Mr. Coleman stated he brought Mr. Ardoin to the jobsite in June, a date that was after work at the Steeplechase apartments concluded. After review, while we cannot conclude under the relaxed standards that the admission of the proffered evidence was error despite the evidence being hearsay, we find that the timing of the admission was harmless as the evidence, under these facts, is not competent evidence that the WCJ should have relied on it making its factual findings. Thus, we find no merit to this assignment of error.

**ASSIGNMENT OF ERROR NUMBER TWO:**

Mr. Ardoin's second assignment of error pertains to his request that the WCJ apply an adverse presumption of the evidence due to GDE's failure to produce documents related to Mr. Ardoin's alleged May 19, 2014 accident. Mr. Ardoin asserts that while the WCJ acknowledged an adverse presumption may be applied where a party intentionally or negligently destroys evidence, it failed to recognize that such a presumption may also be applied when one party fails to produce documents within its control. Due to the purported misapplication of the spoliation doctrine, Mr. Ardoin asserts that he is entitled to a de novo review and that an adverse presumption be applied to the identified documents.

19

Generally, "Louisiana jurisprudence holds that when a litigant destroys, conceals, or fails to produce evidence within his or her control, it gives rise to an adverse presumption that had the evidence been produced, it would have been detrimental to the litigant's case." *Allstate Ins. Co. v. Ford Motor Co.*, 00-710, p. 4 (La.App. 3 Cir. 11/2/00), 772 So.2d 339, 342. But, "when a reasonable explanation exists for the failure to produce the evidence[,]" the presumption does not apply. *Id.* at 342-43. On appeal, we review a trial court's evidentiary rulings regarding spoliation using the abuse of discretion standard of review. *Dauzat v. Dolgencorp, LLC*, 15-1096 (La.App. 3 Cir. 4/6/16), 215 So.3d 833, *writ denied*, 16-832 (La. 6/17/16), 192 So.3d 766.

Mr. Ardoin cites *Sayre v. PNK Lake Charles, LLC*, 15-859 (La.App. 3 Cir. 3/23/16) 188 So.3d 428, *writ denied*, 16-696 (La. 6/28/16), 192 So.3d 780, a case involving the failure to collect evidence, rather than preserve evidence. *Sayre* involved an accident that occurred at L'Auberge hotel wherein the plaintiff fell after her shoe stuck to a clear sticky substance on the floor. L'Auberge had standard operating procedures that mandated certain steps be taken when an accident occurred, such as obtaining statements and reports as well as preserving video surveillance. Despite a video depicting multiple witnesses and employees who either saw the plaintiff fall or came to her aid, the plaintiff "was unable to discover evidence of any employee or witness statement . . . or any report or inspection of previous falls or clean-ups in the area." *Id.* at 433. At trial, the plaintiff requested an adverse presumption jury charge due to L'Auberge's failure to preserve evidence.

On appeal, this court concluded that an adverse presumption should have been given to the jury. After distinguishing jurisprudence in which an explanation was provided for a party's failure to produce evidence, this court found:

> In bright contrast to *Grantham* [*v. Eldorado Resort Casino Shreveport*, 49,474 (La.App. 2 Cir. 11/19/14), 152 So.3d 1028, *writ denied*, 14-2654 (La. 3/6/15)] and *Gomez* [*v. Stop & Shop Supermarket Co.*, 670 F.3d 395 (1st Cir.Mass. 2012)], Ms. Sayre did introduce numerous written policies of L'Auberge and showed through testimony that the defendant had not only entrenched across-the-board policies requiring employees to take a series of specific steps when an accident occurred, those policies demanded a permeating and continuing control of the evidence to the exclusion of all others. The testimony further indicates that the defendant selectively adhered to some of its operating procedures but failed to adhere to others.

*Id*. at 436.

This court explained that "[t]he adverse presumption is a sanction for spoliation, but it also stands on its own as a doctrine and an alternative remedy to restore footing to the party who has unfairly borne the risk of missing evidence and an erroneous judgment." *Sayre*, 188 So.3d at 444. The *Sayre* court also noted the supreme court's statement in *Reynolds v. Bordelon*, 14-2362, p. 13 (La. 6/30/15), 172 So.3d 589, 600 that "Louisiana recognizes the adverse presumption against litigants who had access to evidence and did not make it available or destroyed it."

Mr. Ardoin notes that the issue of spoliation and an adverse presumption was raised in his fourth disputed claim in July 2021, and that evidence of his spoliation claim was set forth in Exhibit 4. However, the spoliation argument was reserved for post-trial briefs as counsel indicated "that the issues may be clearer depending on the testimony of Andy Copeland, GDE's witness." Thus, the WCJ postponed the admissibility determination of Mr. Ardoin's Exhibit 4 to after post-

trial briefs. Exhibit 4 was admitted on March 28, 2022, after the hearing on Mr. Ardoin's Motion for New Trial.

Plaintiff's Exhibit 4 consists of the Fourth Supplemental & Amended Disputed Claim for Compensation in which the spoliation claim was asserted, GDE's responses to discovery, Plaintiff's discovery sent to GDE, excerpts from Mr. Stephen's deposition, and e-mails between counsel regarding outstanding discovery responses. Plaintiff specifically addressed requests for production numbers three (regarding proof of insurance and subcontractor skills), four (regarding GDE job records), and five (regarding copies of payments made to subcontractors) in its post-trial brief.[4]

Mr. Ardoin also asserts on appeal that additional spoliation claims arose during Mr. Copeland's trial testimony that support Mr. Ardoin's request for an adverse presumption. Although Plaintiff's counsel noted during trial that these documents were not provided to them, no request for an adverse presumption regarding these documents was made during trial or in post-trial briefs. Instead, the post-trial brief addresses the failure to produce these documents prior to trial as support for penalties and attorney fees due to GDE's failure to reasonably controvert Mr. Ardoin's claim:

> Andy Copeland revealed the existence of a statement he wrote regarding the May 19, 2014 accident—that statement has never been provided to Plaintiff; while GDE has had it for 396 weeks. Walton Stephens in his trial deposition flat out denied the existence of a [] statement relating to the May 19, 2014 accident. . . . GDE's Project Supervisor, Stephens, never disclosed the existence of the incident report filed by Andy Copeland and he further intentionally denied its existence.

---

[4] We note that the proof of insurance and subcontractor skills appears to be pertinent to Plaintiff's burden of proving direct employment status pursuant to La.R.S. 23:1044 through estoppel. Based on the ultimate conclusion of this court, it is not necessary for us to address this issue or consider this evidence.

22

. . . .

GDE cannot credibly sustain an argument that they reasonably controverted this claim.

"As a general rule, appellate courts will not consider issues raised for the first time on appeal." *JPS Equipment, LLC v. Cooper*, 50,506, p. 8 (La.App. 2 Cir. 2/24/16), 188 So.3d 1106, 1111. However, assuming, for argument's sake, that we should consider this argument, we find for the reasons stated below that it has no merit.

At trial, Mr. Copeland testified that he completed an incident report for the Steeplechase owner as well as a detailed statement for Mr. Stephens of GDE regarding a May 19, 2014 accident involving a K&C employee, Jessie, who fell through the roof. He also testified that GDE had to hire a second subcontractor to repair the hole caused by Jessie falling through the roof. At trial, Mr. Ardoin's counsel noted these documents were never shared during discovery.

Regarding the incident report and detailed statement mentioned by Mr. Copeland, we note that the incident report completed for Steeplechase is not within the control of GDE. Mr. Copeland testified that he did not retain a copy of the incident report. However, he did write a detailed statement for GDE:

Q. Now, when an accident happens on a GDE job site, isn't there an accident report filled out?

A. There would have been an incident report, but it wasn't for GDE. It would have been for the property [owner] just to let them know because no one was hurt, no one was injured. It was an incident so.

Q. Was there an incident report filled out?

A. I believe there was. I believe there was through Bobbie, the manager, at Steeplechase.

. . . .

Q. You did not retain a copy?

23

A.   I didn't have a copy of that.  I wrote it down in another statement explaining to my boss, Steve Stevens [sic] what had happened and more in detail.

As to the detailed statement, although Mr. Ardoin argues that he requested all reports and statements relating to the May 19, 2014 accident, Plaintiff's requests for production only requested "a copy of any statements taken **in this case**[,]" not specifically for the date of May 19, 2014.  (Emphasis added).  Mr. Copeland testified that the detailed statement involved an incident involving Jessie, not Mr. Ardoin.

Plaintiff's Request for Production No. 4, part of Plaintiff's Exhibit 4, further requested GDE "job records" but limited those documents to those "as referred to by Walton Murph Stephens, III on page 12 of his deposition.  (Attached for reference)."  In his deposition, Mr. Stephens was asked how GDE maintained track of the subcontractors working on jobs.  Mr. Stephens explained that in this case, "[i]n addition to not only keeping our records, it was required by this particular owner that we have a daily log[.]"[5]  It is clear that Mr. Stephens's answer regarding "our records" was regarding employees present on job sites.  As to records of accidents, he testified specifically that it was not GDE's policy to complete incident reports for non-GDE employees, although Mr. Stephens would expect any incident to be noted on a daily log, if one was required at that job:

Q.   Generally, when there's an on-the-job accident, there's a[n] accident report.  Now I guess my question is: Well, one, does GDE require accident reports wherever there's a job site accident?

A.   Best of my knowledge, that's true.

---

[5] GDE responded to this discovery by producing the job logs.  There is no evidence or testimony suggesting that additional responsive documents existed that were not produced.

24

Q.    That's true.  Okay.  So when a subcontractor, one of his employees has an accident.  GDE doesn't require that subcontractor to fill out an accident report?

A.    I don't know the answer to that question.

. . . .

Q.    . . . If a GDE employee, an actual employee of GDE was injured - - Let's say Andy Copeland was injured.  If he was injured on the job, there would be a requirement that an accident report get filled out?

A.    Yes.

Q.    But you don't require Andy to fill out any accident reports of any subcontractor employees injured?

A.    No.

. . . .

A.    Well, let me clarify that.  In the particular scenario where we had a job log, I expect Andy to write it down on the job log.

Therefore, although our jurisprudence applies an adverse presumption when a party destroys evidence, fails to produce evidence that it had access to, and, in some cases, fails to collect evidence, under the facts in this case we cannot say that the adverse presumption applies to the incident report or detailed statement discussed during Mr. Copeland's testimony.

On the other hand, documents pertaining to hiring a second subcontractor are within the control of GDE and would have responded to Plaintiff's request for production Number 1:[6]

---

[6] While payment documents to a second subcontractor to repair the ceiling appear to be responsive to Plaintiff's Request for Production No. 5, that request limits the production request to those payments that were referred to on pages 31-33 of Mr. Stephens's deposition.  On these pages, counsel and Mr. Stephens are clearly discussing the subcontractor that was contracted to assist in repairing the roof, i.e. K&C, not the ceiling within the apartment.  The discussion involves payroll periods and draws.

REQUEST FOR PRODUCTION NO. 1
Please provide a copy of documents or information (in any form), including, contracts, agreements, billing, invoices, etc., relating the Steeplechase Apartments roof replacement job that took place between May and June 2014.

However, an adverse presumption regarding a contract with a second subcontractor would only support the conclusion that a second subcontractor was hired to make repairs to the ceiling of one of the Steeplechase apartments—which Mr. Copeland admitted to in his testimony. Even if this contract indicated the reason for the damage, i.e., someone falling through the roof, this fact has not been denied by GDE. Instead, GDE has admitted that an incident like this occurred on May 19, 2014, but denied that it was Mr. Ardoin who was involved. Thus, any error of the WCJ to apply an adverse presumption to this fact would be harmless.

**ASSIGNMENT OF ERROR NUMBER THREE:**

In his third assignment of error, Mr. Ardoin argues that the WCJ erred in finding that GDE did not make a judicial confession that Mr. Ardoin was present on the Steeplechase jobsite in its Motion for Judgment of Preliminary Default against K&C. Mr. Ardoin asserts that this failure hindered his ability to carry his burden of proof. While the WCJ found the statement was one of alternative liability, Mr. Ardoin argues that the default judgment could not be entered against K&C without the factual assertion and judicial finding that K&C was Mr. Ardoin's employer, and that Mr. Ardoin was present at the jobsite.

Louisiana Civil Code Article 1853 defines a judicial confession as "a declaration made by a party in a judicial proceeding. That confession constitutes full proof against the party who made it."

> A judicial confession under La.Civ.Code art. 1853 constitutes incontrovertible evidence of a particular issue and serves to waive the necessity of any further proof on that issue. *Ramelow v. Bd. of*

26

*Trustees of the University of Louisiana System,* 03–1131 (La.App. 3 Cir. 3/31/04), 870 So.2d 415, *writ denied,* 04–1042 (La.6/18/04), 888 So.2d 184; *C.T. Traina, Inc. v. Sunshine Plaza, Inc.,* 03–1003 (La.12/3/03), 861 So.2d 156. In order for a party's statement to constitute a judicial confession, it must be an express acknowledgment of an adverse fact. *Jones v. Gillen,* 564 So.2d 1274 (La.App. 5 Cir.1990); *Sanders v. Earnest,* 34,656 (La.App. 2 Cir. 7/24/01), 793 So.2d 393; *State v. Lamb,* 31,919 (La.App. 2 Cir. 5/7/99), 732 So.2d 1270. Additionally, "the adverse party must have believed the fact was no longer at issue or must have relied on it, to his detriment." *Lamb,* 732 So.2d at 1272; *Alexis v. Metropolitan Life Insurance Co.,* 604 So.2d 581 (La.1992); *Jefferson Parish v. Fidelity & Deposit Co.,* 95–951 (La.App. 5 Cir. 4/30/96), 673 So.2d 1238; *Jones,* 564 So.2d 1274. . . .

Finally, courts have taken into account a party's otherwise consistent opposition to the fact alleged to have been confessed.

*Leday v. Safeway Ins. Co. of La.*, 04-610, pp. 5-6 (La.App. 3 Cir. 11/17/04), 888 So.2d 1084, 1088.

In support of his argument, Mr. Ardoin cites *C.T. Traina, Inc. v. Sunshine Plaza Inc.*, 03-1003 (La. 12/3/03), 861 So.2d 156, for the proposition that allegations made by a party in other pleadings may constitute a judicial confession pursuant to La.Civ.Code art. 1853. In *C.T. Traina, Inc.*, the supreme court held that the admission of an oral contract in a prior pleading, an exception of no cause of action, was a judicial admission, despite the existence of a contractual relationship being denied and an oral contract only being pled in the alternative in a subsequent pleading. The supreme court declined to find that the subsequent pleading revoked the judicial admission:

La. Civ.Code art. 1853 explicitly provides that a judicial confession may be revoked only on the ground of error of fact. At no time did Sunshine assert its judicial confession of an oral contract was made in error. To the contrary, Sunshine's amended answer confirmed Sunshine's earlier allegation of an oral contract by continuing to allege, in the alternative, that an oral contract existed.

27

*Id.* at 160. Thus, pursuant to the judicial confession, the plaintiff was not required to present affirmative proof of the oral contract.

GDE's Motion for Judgment of Preliminary Default was based on K&C's failure to timely respond to GDE's Petition of Third Party Demand. GDE's Petition of Third Party Demand states:

1.

Claimant, Stilton Ardoin, was not an employee of GDE Renovations, Inc. at the time of the alleged accident.

2.

GDE Renovations, Inc. and/or Granite State Insurance Company are not liable for workers' compensation benefits to claimant as Silton Ardoin was not its employee.

3.

At all times material herein, it is believed that K & C Sheet Metal and Roofing, Inc. was the direct employer of Silton Ardoin.

4.

K & C Sheet Metal and Roofing, Inc. is liable for claimant's workers' compensation benefits if such benefits are due, which is affirmatively denied, because K & C Sheet Metal and Roofing, Inc. was the direct employer at the time of the alleged accident.

5.

Alternatively, in the event that the court finds GDE Renovations, Inc. and/or Granite State Insurance Company responsible for workers' compensation benefits to Silton Ardoin, GDE Renovations, Inc. and/or Granite State Insurance Company are entitled to complete contribution and indemnity from K & C Sheet Metal and Roofing, Inc. for any sums that GDE Renovations, Inc. and/or Granite State Insurance Company may be found to be liable to pay.

6.

At all times material herein, K & C Sheet Metal and Roofing, Inc. represented to Third Party Plaintiffs, GDE Renovations, Inc. and/or Granite State Insurance Company, that it had valid workers'

compensation insurance coverage for any and all employees that might perform any services for K & C Sheet Metal and Roofing, Inc.

7.

K & C Sheet Metal and Roofing, Inc. is liable to GDE Renovations, Inc. and/or Granite State Insurance Company pursuant to contract and statute in the event it is found that GDE Renovations, Inc. and/or Granite State Insurance Company are liable for any workers' compensation benefits to Silton Ardoin.

8.

Third Party Plaintiffs, GDE Renovations, Inc. and/or Granite State Insurance Company, allege that if they are held responsible for the payment of any medical and/or indemnity benefits incurred by Silton Ardoin as a result of the alleged workplace accident, which is at all times denied, then these expenses were incurred during the course and scope of claimant's employment with K & C Sheet Metal and Roofing, Inc., not GDE Renovations, Inc.

9.

If K & C Sheet Metal and Roofing, Inc. and GDE Renovations, Inc. and/or Granite State Insurance Company are held to be solidary obligors, K & C Sheet Metal and Roofing, Inc. is liable to GDE Renovations, Inc. and/or Granite State Insurance Company under the Louisiana Workers' Compensation Act and the aforementioned Contract for complete indemnity and/or full contribution.

10.

K & C Sheet Metal and Roofing, Inc. is solely liable to Silton Ardoin for any and all of Silton Ardoin's damages under the Louisiana Workers' Compensation Act.

11.

Third Party Plaintiffs, GDE Renovations, Inc. and/or Granite State Insurance Company, further assert that K & C Sheet Metal and Roofing, Inc. is liable for reimbursement to GDE Renovations, Inc. and/or Granite State Insurance Company for any expenses it incurred as a result of the alleged workplace accident of Silton Ardoin, including penalties, attorney fees and costs of defending these proceedings.

WHEREFORE, the premises considered, Third Party Plaintiffs, GDE RENOVATIONS, INC. and/or GRANITE STATE INSURANCE COMPANY, pray that 1) Third Party Defendant, K &

C Sheet Metal and Roofing, Inc., in its capacity as employer be served with a copy of this Third Party Demand; 2) that in the event third party plaintiffs are found liable for any workers' compensation benefits, that there be judgment rendered against the Third Party Defendant, K & C Sheet Metal and Roofing, Inc., for all medical and indemnity benefits to include legal interest from the date of judicial demand until paid and for all costs of these proceedings including and [sic] any penalties and attorney fees; 3) Any and all expert witness fees be taxed as costs; 4) Third Party Defendant, K & C Sheet Metal and Roofing, Inc., be cast with all attorney fees incurred by Third Party Plaintiffs and for all costs of these proceedings; 5) Third Party Plaintiffs, GDE RENOVATIONS, INC. and/or GRANITE STATE INSURANCE COMPANY, pray for general and equitable relief.

After review, we find no error in the WCJ's determination that GDE's Petition of Third Party Demand did not make a judicial confession of employment by K&C and GDE was, instead, pleading the alternative liability of K&C as the direct employer should GDE be found liable to Mr. Ardoin. GDE also continued to deny that Mr. Ardoin was employed on the Steeplechase jobsite. As the court stated in *Taylor v. Foremost Insurance Co.*, 576 So.2d 1083 (La.App. 3 Cir. 1991), alleging in the alternative, after denying liability, does not amount to a judicial confession and, if it did, it would only be an admission that GDE was alleging K&C's liability in the alternative.

Furthermore, this issue is not determinative of the outcome in this case. As discussed below, the WCJ also made a factual determination that Mr. Ardoin was not involved in an accident at the GDE jobsite. Thus, even if GDE's third party demand was a judicial confession of K&C's employer status, Mr. Ardoin was still required to prove by a preponderance of the evidence that he suffered an accident at work.

**ASSIGNMENT OF ERROR NUMBER FOUR:**

Lastly, Mr. Ardoin alleges that the WCJ erred by applying a liberal construction of the facts in favor of GDE. Mr. Ardoin argues that the WCJ

30

adopted GDE's narrative, specifically comparing the testimony of Mr. Copeland to that of Mr. Ardoin in order to find Mr. Ardoin's testimony illogical. Mr. Ardoin suggests that the record supports Mr. Ardoin's testimony, not Mr. Copeland's.

In opposition, GDE asserts that Mr. Ardoin was not credible and was impeached during his testimony. GDE notes that Mr. Ardoin's testimony contradicts the daily logs and the progress notes therein, Mr. Sterling's account of May 19, 2014, and ignores the equipment that was available on the jobsite. GDE further asserts that Mr. Ardoin's medical records are inconsistent with how and where Mr. Ardoin's injury was sustained, and list "Master Clean" as his employer on both May 20, 2014, and June 9, 2014.

The WCJ made a specific finding that Mr. Ardoin was not credible and gave reasons for that finding such as the fact that Mr. Ardoin changed the date of the accident several times, Mr. Ardoin's testimony regarding the start time of the job which contradicted the evidence of the actual start time, Mr. Ardoin's failure to note equipment being used at the job site, and Mr. Ardoin's description of the work taking place on the day of the accident which was contrary to the evidence.

"In a workers' compensation case, the employee bears the burden of proving by a preponderance of the evidence that an accident occurred, it occurred in the course and scope of his employment, the accident caused his injury, and the injury caused his disability." *Salgado v. Tri-Roofing & Home Improvements*, 19-407, p. 6 (La.App. 5 Cir. 5/2/20), 296 So.3d 1201, 1207. While "[a] worker's testimony alone may be sufficient to discharge this burden of proof[,]" that is the case when "no other evidence discredits or casts serious doubt upon the worker's version of the incident" and "the worker's testimony is corroborated by the circumstances following the alleged incident." *Id.* We reiterate that factual findings of the WCJ

31

are reviewed for manifest error on appeal and where a conflict in the testimony exists, "reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review." *Id*. at 1205-06.

First, although GDE asserts that Mr. Ardoin was impeached during his testimony regarding witnesses to his alleged accident, we do not find the evidence was so conclusive. GDE argues that Mr. Ardoin testified in his deposition that his accident was witnessed by "Joe" and Calvin Coleman, but during trial, Mr. Ardoin was adamant that Mr. Coleman did not witness the accident but was a witness to Mr. Ardoin being on the job site. GDE admitted the page of alleged contradictory testimony from Mr. Ardoin's deposition into evidence, in which he stated:

Q.     Were there any witnesses to your accident?

A.     Well the guy that was handing me the shingles - - the guy that was handing me the shingles.

Q.     Who was that?

A.     That was Joe.

Q.     Was there any other witness to the accident?

A.     Well, Mr. Calvin.  He was - -

Q.     What about Gosto?

A.     Gosto was down.  I was up. . . .

At trial, Mr. Ardoin testified that Calvin Coleman provided him with information regarding the job and that he rode with Mr. Coleman to the jobsite where he was subsequently hired by Gustavo. The deposition testimony is unclear regarding Mr. Coleman's role as a witness as it appears Mr. Ardoin's testimony was unfinished.

As to the date of the accident, Mr. Ardoin did change the date of the accident in his Disputed Claim for Compensation. He also seemed unclear about the date at trial:

Q. . . . Do you remember the exact day of the accident, what the number of the day was?

A. The 17th - - the 19th?

Q. 19th?

A. Yes, ma'am.

Q. 2014?

A. Yes, ma'am.

Q. Okay.

MR. WILSON:
Your Honor, again leading the witness.

JUDGE PALERMO:
Please rephrase.

BY MS. VALOIS:
Q. Do you remember the date of - - that the accident happened?

. . . .

A. 17th. 17th or the 23rd, I think, the 24th.

Q. Okay. . . . After you had the accident, did you seek any medical treatment?

A. No. He didn't want to take me to the doctor. He took me home.

Q. Okay. What about the next day?

A. The next day I went to the doctor. My knee was swelling up.

Q. . . . This record that I've shown you from your medical records that have been admitted into evidence shows that you came to

the ER on May 20th of 2014, reporting falling through the roof the day before.

> A.     Yes, ma'am.

> Q.     Okay.  And so based on this record, is it fair to say that your accident happened the day before May 20th of 2014, which would be May 19, 2014?

> . . . .

> A.     It was May 19th.

Mr. Ardoin also described a time that he started work which was contrary to other evidence regarding the start time of the job.  Mr. Ardoin testified that they worked from 7:00 a.m. to 6:00 p.m.  He cites one daily log in support of his testimony that work began at 7:00 a.m.  That daily log noted that it was raining around 7:05 a.m., therefore work could not start until 11:00.  There is no indication by this note that work would have otherwise started at 7:00.  Mr. Copeland testified that work did not begin until 8:30 each morning, a stipulation of the apartment complex because the building being worked on was occupied, and that work would continue until 7:30 p.m.

Regarding the work taking place on May 19, 2014, the project update narrative on the daily log explained that the old shingles and felt were removed on May 17th.  Thereafter, on the 19th, the damaged wood was replaced.  Mr. Copeland specifically testified that, on this date, the shingles are on the ground:

> Q.     So at this point where are the shingles?

> A.     Shingles are on the pallet on the ground.  We haven't even bothered to put them up there.  You can't - - you've got to get - - certain processes have to be done before you move anything on the roof.  It's going to be in your way.  The decking has to be done.

> Then once you've replaced all the bad pieces of decking, you've got it all - - you have to mark it, put the new pieces in . . . .  Then we have to put down the felt. . . . [W]hich requires two layers of

34

> felt. We had tin tags. . . . They're sheet metal . . . and they have to be like every square foot with a nail in the center of them. . . . The shingles are the last thing.

New felt and shingles were being installed on the 20th. While it may be reasonable to assume that shingle bundles would be brought to the roof on the afternoon of May 19th in preparation for laying them on the 20th, Mr. Copeland testified that the bundles would not be placed in advance of laying new felt as they would be in the way. Mr. Copeland also testified that there was a motorized lift to bring the shingle bundles to the roof, where the roofers would then place the bundles where they were needed, whereas Mr. Ardoin testified that he carried the bundles up a ladder. Mr. Copeland also testified that any roofer on the roof was required to be tied to a rope and wearing an OSHA-approved safety harness. Only three ropes were on the roof.

The WCJ is correct that Mr. Copeland's testimony contradicted Mr. Ardoin's version of the events, as did GDE's records. We also agree that Mr. Ardoin is not the most reliable of witnesses considering the record. His claim does not correspond with the timeline of the roofing project as detailed in the Daily Log update narratives. On more than one occasion, Mr. Ardoin's date of injury is noted as being in June (see his original disputed claim for compensation and several medical records).

While Howard Sterling's testimony did offer some support for Mr. Ardoin's claim, Mr. Sterling's testimony contradicted both parties' evidence. While Mr. Sterling specifically testified that he witnessed Mr. Ardoin's fall, his version of the event differed from Mr. Ardoin's version. He explained that he was "in front of [Mr. Ardoin] like I was going first, when I was turning around to go he was

35

bringing the bag and that's when I seen him. . . . I seen when he go into the thing . . . when the accident happened."

He also testified that Mr. Ardoin returned to work the following day. However, Mr. Ardoin testified that "Joe" was working with him on the day of the accident, not Mr. Sterling, and that he was the only one on the roof. Furthermore, Mr. Ardoin testified that he never returned to the jobsite. Mr. Sterling denied ever going by the name "Joe."

However, Mr. Sterling's testimony also contradicted Mr. Copeland's testimony and the daily logs. Mr. Sterling testified that he carried shingle bundles up the ladder, not that he used a motorized lift. He also testified that he worked for three weeks, despite his name only appearing on the daily logs three times and denies that he ever signed his name on the log. He also denies ever seeing Mr. Copeland at the jobsite.

Mr. Ardoin's medical records indicate that he visited the emergency department on May 20, 2014, at approximately 11:31 a.m. alleging that he was injured when he fell through a roof. The triage notes states "R knee pain and lower back pain . . . falling through a roof yesterday. . . swelling to R knee." The additional records from that day indicate that the fall occurred at "home." X-rays were ordered, with the findings of the right knee stating "[t]here is a large joint effusion and significant soft tissue swelling." Mr. Ardoin returned to the emergency department on June 9, 2014, for "knee pain x 3-4 weeks. Seen here 5/20/14 for same. Pt knee immobilizer in place."

The June 24, 2014 records under "History of Present Illness" report that the patient "was referred here from ER for persistent right knee pain after a fall accident at home." The history continues, "Was at work and fell off the first floor

36

and and [sic] had acute pain and swelling in his R knee and hip, now after almost 4 weeks he still has severe pain and swelling still in his R knee, hip pain almost resolved." The patient was documented wearing a knee brace. MRI findings dated June 27, 2014, included "[a] large knee joint effusion is present, with a large Baker's cyst." The history reported was a "[r]ight knee injury at work one month ago. Fall [sic] through a roof."

A history taken at a July 21, 2014 visit contradicts Mr. Ardoin's injury occurring in May 2014. That record documented the chief complaint from nursing triage as "c/o bilat leg pain. States attempted to shift self in bed and legs began hurting shooting pain. Recently injured on job 6/2014." The record recounts the history of the present illness, "The patient presents with lower extremity pain, knee pain and knee swelling. The onset was June 19th. . . . Type of injury: fall. Location: Bilateral knee leg."

Mr. Ardoin visited the emergency room again on October 23, 2014, with "[b]ilateral knee pain since June[.]" The history notes, "The patient presents with knee pain and Bilateral knee pain and hip pain. The onset was 18 weeks ago. . . . Type of Injury: fall and PT fell off a roof in **June** and has had pain on and off since." (emphasis added).

Mr. Ardoin was eventually referred to an orthopedic clinic. On August 12, 2015, Mr. Ardoin was seen at the orthopedic office. A history of the present illness was documented and states, "53 yo AA male presents to ortho clinic for c/o bilateral knee pain. Reports that the pain started 'several years ago' but admits that it 'got worse when I fell through a roof replacing some shingles a year ago'."

Mr. Ardoin consistently reported for years that his injury was sustained when he fell through a roof. However, those records first indicate the accident

37

occurred at home, and, in July and October of 2014, the medical records indicate that his injury occurred in June, not May. Additionally, GDE correctly notes that medical records from May 20, 2014, and June 9, 2014, have Master Clean listed as Mr. Ardoin's employer.

Mr. Ardoin suggests this case's fact pattern is nearly identical to that in *Salgado*, 296 So.2d 1201, involving a roofing accident, a general contractor, and a subcontractor. However, in *Salgado*, the fifth circuit stated, significantly, that "Mr. Dinger [the employer] appears to have chiefly contested only [plaintiff's] status as an employee, while his own testimony seems to corroborate [plaintiff's] story of being injured on the jobsite, including the testimony by Mr. Dinger that he recognized [plaintiff] from the jobsite and was aware of an accident on-site that day." *Id*. 1207-08. The opinion further notes that Mr. Dinger "testified that he saw [the subcontractor] speaking to an injured [plaintiff] at the jobsite[.]" *Id*. at 1206.

Mr. Ardoin does not present the same affirmative evidence of his injury occurring on the job in this case. Instead, he presented one witness to his presence on the job, who detailed a different version of the alleged accident, and whose testimony contradicted Mr. Ardoin's regarding the events following the accident. Moreover, Mr. Ardoin's name does not appear on the daily logs, Mr. Copeland testified that he does not recall seeing Mr. Ardoin at the jobsite, and Mr. Ardoin's version of the events do not match with the progress of the roof replacement as notated in the project update narratives.

The WCJ simply found that Mr. Ardoin's testimony was not credible and was not sufficient to prove that he suffered an accident and subsequent injury while on GDE's jobsite. On appeal, we cannot say that the WCJ committed manifest error in that finding.

38

**DECREE:**

For the foregoing reasons, the March 18, 2022 Amended Final Judgment in favor of GDE Renovations and K&C Sheet Metal and Roofing, Inc. is affirmed. Costs of this appeal are assessed against Appellant, Silton Ardoin.

**AFFIRMED.**